In re the MARRIAGE OF Helena
R. WALTERS and Douglas
L. Walters.

Upon the Petition of Helena
R. Walters, Appellee,

And Concerning

Douglas L. Walters, Appellant.

No. 96–708.

Supreme Court of Iowa.

March 25, 1998

Gary F. McClintock of Hoeger & McClintock, Independence, for appellant.

Tom Jenk of Jenk & Goen, Dyersville, for appellee.

Considered by LARSON, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

SNELL, Justice.

Douglas L. Walters appeals from district court and court of appeals decisions denying his application for modification of his child support obligation. For the reasons set forth below, we vacate the decision of the court of appeals, reverse the judgment of the district court and remand for further proceedings.

## I. Background Facts and Proceedings

Douglas and Helena Walters were married on June 2, 1972. They are the parents of four children. Their marriage was dissolved by decree on May 4, 1992. Both parties have since remarried. At the time of the decree, the parties entered into a stipulation which was incorporated into the decree. All provisions of the decree except for the dissolution of the marriage were later set aside and issues of division of property, child custody and child support were considered by the district court. On March 2, 1993, the district court entered a decree granting Helena primary physical care of the three minor children. Douglas was ordered to pay $987.32 per month in child support. The amount was set to decrease to $845.52 per month in August 1993, when the second-oldest child, Crystal, began college. However, under the provisions of the decree Douglas was still required to pay $250 per month directly to Crystal for her college education, with Helena contributing an additional $100 per month. Douglas paid child support, albeit somewhat inconsistently, and as of July 1994 he was current with his obligation.

At the time the district court established the amount of child support Douglas was required to pay, he was employed by the United States Postal Service as postmaster for the town of Lamont, Iowa. He earned approximately $42,000 per year. In August 1994, the postal service fired Douglas when it discovered he had been embezzling funds.

Douglas ceased making child support payments at that time. Douglas was subsequently convicted and incarcerated from November 13, 1994 to November 7, 1995. In January 1996, Douglas obtained employment as a factory laborer at a rate of $5.75 per hour. His gross weekly earnings are approximately $230.

Douglas filed an application for modification of child support on November 10, 1994, arguing that a substantial change in circumstances had occurred which warranted a recalculation of his child support obligation. A hearing on the application was held on March 2, 1996. At the time of the hearing, Douglas was nearly $17,000 in arrears on his child support obligation. The two children remaining at home at that time were Nicole, sixteen, and Caitlyn, eight. The district court denied Douglas' application for modification, finding that his incarceration and subsequent inability to find employment comparable to his preconviction job as postmaster did not constitute a substantial change in circumstances. The district court also found Douglas in contempt for failing to obtain release of the money in his postal service pension fund for satisfaction of his child support arrearage. Douglas appealed.

We transferred the case to our court of appeals, which affirmed en banc. The court concluded that while Douglas did not embezzle to avoid his child support obligation, his conduct constituted a reckless disregard for his children's well-being. The court opined that a reduction in his support obligation would be tantamount to rewarding him for his misdeed. The court noted that Douglas had obtained release of his pension fund to be applied in part toward his accrued support obligation. One judge dissented from the majority opinion, arguing that the majority's refusal to modify the support obligation was unreasonable because Douglas simply cannot make the payments. The dissent cited the statistics that Douglas' net monthly income is $870 and his child support obligation is $845.52, rendering fulfillment of his obligation nearly impossible. We granted Douglas' application for further review.

## II. Scope of Review

Our scope of review of a child support modification action is de novo. *In re*

*Marriage of Bolick,* 539 N.W.2d 357, 359 (Iowa 1995); Iowa R.App. P. 4. We give weight to the trial court's factual findings, especially when considering the credibility of witnesses, but are not bound by them. *Bolick,* 539 N.W.2d at 359. We recognize that the district court "has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity." *In re Marriage of Vetternack,* 334 N.W.2d 761, 762 (Iowa 1983).

### III. Discussion

■ Pursuant to Iowa Code section 598.21(8) (1995), a court may modify an order of child support when a "substantial change in circumstances" has been shown to exist. One of the factors which the court is to consider is: "Changes in the employment, earning capacity, income or resources of a party." Iowa Code § 598.21(8)(*a*). This is the factor relied on by Douglas in his quest to have his support obligation reduced. The party seeking the modification must prove the change in circumstances by a preponderance of the evidence. *In re Marriage of Feustel,* 467 N.W.2d 261, 263 (Iowa 1991).

■ There are several principles regarding satisfaction of the statutory standard which can be gleaned from our prior modification cases:

> (1) there must be a substantial and material change in the circumstances occurring after the entry of the decree; (2) not every change in circumstances is sufficient; (3) it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice; (4) the change in circumstances must be permanent or continuous rather than temporary; (5) the change in financial conditions must be substantial; and (6) the change in circumstances must not have been within the contemplation of the trial court when the original decree was entered.

*Vetternack,* 334 N.W.2d at 762. We also note the existence of the following trends in our modification cases: "(1) a growing reluctance to modify decrees; (2) current inability to pay has become less a consideration and long range capacity to earn money has become more of a consideration; and (3) any voluntariness in diminished earning capacity has become increasingly an impediment to modification." *Id.* at 763.

With regard to the voluntariness issue, we have stated:

> [A] parent may not rely on a claim of decreased income to obtain a modification of a support order if the parent's reduced earning capacity and inability to pay support is self-inflicted or voluntary. Therefore, parents who reduce their income through an improper intent to deprive their children of support or in reckless disregard for their children's well-being are not entitled to a commensurate reduction in child support payments.

*In re Marriage of Swan,* 526 N.W.2d 320, 323–24 (Iowa 1995) (citation omitted).

This principle has been applied in various situations. In some, our court and the court of appeals have found an obligor's decreased earning capacity to be the result of involuntary factors and thus have granted a request for modification. *See, e.g., In re Marriage of Foley,* 501 N.W.2d 497, 500 (Iowa 1993) (finding that obligor's reduction in income due to termination of employment for insubordination was not voluntary or self-inflicted); *Boquette v. Boquette,* 215 Iowa 990, 992, 247 N.W. 255, 256 (1933) (obligor's demotion with resulting lower salary justified reduction of support obligation); *Nicolls v. Nicolls,* 211 Iowa 1193, 1197, 235 N.W. 288, 289 (1931) (discharge from employment and inability to obtain job with comparable pay justified reduction of support obligation); *In re Marriage of Drury,* 475 N.W.2d 668, 672 (Iowa App.1991) (finding honorable discharge from military and concomitant loss of military pay for failure to comply with weight limits was not voluntary or self-inflicted); *In re Marriage of Fidone,* 462 N.W.2d 710, 712 (Iowa App.1990) (granting modification to parent who lost job and refused to move 1200 miles to take another job with less security).

On the other hand, our court and the court of appeals have sometimes found an obligor's actions resulting in decreased earning capacity to be voluntary and self-inflicted and therefore refused to modify the child support obligation. *See, e.g., In re Marriage of Daw-*

*son,* 467 N.W.2d 271, 275–76 (Iowa 1991) (refusing to reduce child support obligation for obligor who quit job to finish education and take a job with lower pay); *Vetternack,* 334 N.W.2d at 763 (court unwilling to modify obligation for obligor who committed felony and was incarcerated but who had equity in home from which obligation could be satisfied); *Ellis v. Ellis,* 262 N.W.2d 265, 267–68 (Iowa 1978) (finding obligor's voluntary retirement at time when he still had substantial earning capacity to be voluntary and self-inflicted); *Reed v. Reed,* 260 Iowa 1166, 1168–69, 152 N.W.2d 190, 191 (1967) (refusing to modify support obligation when obligor voluntarily quit job to return to school); *In re Marriage of Bales,* 439 N.W.2d 228, 230 (Iowa App.1989) (declining to modify obligation when obligor quit job paying $15,000 per year to take job paying $5900 per year).

Our court, as well as the court of appeals, has previously considered the question of whether an obligor's incarceration constitutes a substantial change in circumstances justifying modification of a support obligation. In *Vetternack,* the father-obligor was incarcerated following his conviction for terrorism. *Vetternack,* 334 N.W.2d at 762. He filed a petition for modification, alleging that his incarceration constituted a substantial change in circumstances which justified reduction of his child support obligation. Our court upheld the district court's denial of the requested modification, finding that the father had sufficient assets, $15,000 equity in his home, against which the support payments could be charged until his release from prison. *Id.* at 763.

The fact that the father had assets from which his support obligation could be satisfied while he was incarcerated appears to be an important factor in our holding in *Vetternack.* We did not consider, however, the effect the father's incarceration and his status as a convicted felon would have on his earning capacity following release from prison. Furthermore, the amount of the child support obligation in *Vetternack,* $320 per month, was significantly less than what Douglas is required to pay under the current child support order.

Our court of appeals has also considered whether incarceration constitutes a substantial change in circumstances. *In re Mar-*

*riage of Phillips,* 493 N.W.2d 872 (Iowa App. 1992). In so doing, it extended our holding in *Vetternack* by denying a petition for modification for an incarcerated obligor who had no assets against which the support obligation could be charged. *Phillips,* 493 N.W.2d at 878. The court found that the father's incarceration did not constitute a substantial change in circumstances, noting that "[i]t would not be equitable to suspend his responsibility for his children while he is incarcerated." *Id.* Before reaching this decision, the court carefully examined decisions from various jurisdictions and found them fairly evenly divided on the issue of whether incarceration warrants a reduction in an obligor's child support obligation. The court acknowledged the fact that the father had no assets against which the obligation could be charged during his incarceration. The court, however, concluded that fact did not justify modification, noting that a "lack of assets should not serve as a shield against a child support obligor's responsibilities." *Id.* at 877. Instead, the court relied heavily on the voluntariness of the father's crime and his alleged reckless disregard for his children's well-being. *Id.* at 877–78. While the court concluded that the father's incarceration did not warrant reduction of his support obligation, it did state that upon his release from prison, "the monthly obligation can be adjusted as his financial situation then requires." *Id.* at 879.

■ We have not previously considered whether an obligor's decreased earning capacity following release from prison warrants a reduction in child support. *Vetternack* embodies our prior determination that incarceration is the result of voluntary conduct; however, that case also acknowledged the reality of the obligor's situation. One factor in our decision to refuse the obligor's request for a reduction in his support obligation was the fact that he had assets available which could be used to satisfy his obligation while he was incarcerated. *Vetternack,* 334 N.W.2d at 763. Therefore, it appears that the obligor's ability to pay remained a consideration in reaching our decision to refuse the request for modification. The court of appeals' decision in *Phillips,* although thorough in its examination of other jurisdictions' holdings on this issue, did not recognize this court's

holding in *Vetternack* as requiring some examination of the incarcerated obligor's ability to pay. Therefore, we overrule the court of appeals' holding in *Phillips* that the obligor's lack of available assets to fulfill his support obligation while incarcerated is not a consideration in a modification proceeding.

◼ Extending our holding in *Vetternack*, we find that although Douglas' current financial status is the result of his voluntary criminal activity, some consideration of his earning capacity and ability to pay is necessary. We find that Douglas' reduction in income and earning capacity is the result of his criminal activity which, although voluntary, was not done with an improper intent to deprive his children of support. *See Swan*, 526 N.W.2d at 323–24. While we realize our decision to reduce Douglas' support obligation will impact the parties' children, we must base our decision on reality rather than an unattainable utopia. With his status as a convicted felon, it is unrealistic to expect that Douglas will be able to obtain a job with pay comparable to that which he enjoyed prior to his criminal conduct. Certainly, very few companies or organizations would be willing to trust a convicted felon with a supervisory position such as Douglas held prior to his criminal activity. Douglas' status, combined with his lack of a college education, convinces us that in all likelihood he will be relegated to low-paying labor jobs for the foreseeable future. While we do not rule out the possibility of Douglas obtaining a higher-paying job, if that eventuality should arise, Helena could seek a modification at that time.

We also consider the factors set forth in *Vetternack* in making our decision to grant the requested modification. The change in Douglas' financial situation is substantial. Prior to his criminal activity he earned approximately $20 per hour, while he now earns only $5.75 per hour. This is a substantial discrepancy. Clearly, this change in Douglas' financial condition was not within the contemplation of the trial court when the original decree was entered. Although Douglas admits he was embezzling at that time, no one, least of all the court, was aware of this illegal activity. We also conclude that the change in circumstances is permanent or continuous, not simply temporary. Douglas searched for several months before obtaining the job he currently holds. It seems clear from the record that he did not take a low-paying job simply to avoid his support obligation. His status as a convicted felon will not change. Furthermore, Douglas was forty-four at the time of the modification hearing, not an age at which new knowledge or skills are readily acquired.

Enforcing the original decree in this situation would place an insurmountable burden on Douglas. His current monthly support obligation nearly equals his monthly net pay. We conclude that the district court and court of appeals' refusal to modify Douglas' support obligation fails to do equity between the parties and accordingly, we vacate the decision of the court of appeals and reverse the district court's judgment.

## IV. Disposition

Douglas filed his petition for modification on November 10, 1994, shortly before he entered prison. A child support order may not be modified retroactively prior to the date the petition for modification is served on the opposing party. Iowa Code § 598.21(8)(k). Thus, Douglas is responsible for the unpaid child support that accrued from the time of his termination from employment on August 1, 1994, until the time he served the petition on November 10, 1994. Furthermore, we conclude based on our holding in *Vetternack* that Douglas should be held responsible for his support obligation during the period of his incarceration. He had assets, specifically his postal service pension, from which support payments could be drawn. *See Vetternack*, 334 N.W.2d at 763.

It appears that Douglas' pension fund has now been released and may have been used to satisfy some of his outstanding support obligation. It is not clear from the record, however, how much Douglas ultimately received from his pension fund, nor how much of that money was applied to reduce his accrued support obligation.[1]

We order Douglas to pay any unpaid support which accrued between August 1, 1994,

1. In the dissolution decree of March 2, 1993, Helena was awarded approximately one-half of

Douglas' pension fund, which was then valued at approximately $22,000. The postal service had a

and November 7, 1995, the date of his release from prison, which was not satisfied by the funds from his postal service pension. The calculation of unpaid support for this time period shall be based on the monthly support obligation of $845.52 for Nicole and Caitlyn, plus $250 per month ordered for Crystal's college education, provided she remained in college throughout that time.

Douglas was released from prison on November 7, 1995, but did not obtain employment until January 31, 1996. The record discloses that Douglas searched diligently for employment during that period of time. Therefore, we are reluctant to order a maintaining of the level of support in existence at the time he entered prison for that interim period. Moreover, we are unable to set the amount of child support for the period following November 7, 1995. We are unable to do so because current child support guidelines worksheets are not found in the record. The only financial information available for the parties dates back to affidavits of financial status filed at the time of the initial dissolution proceeding in 1993. That information is useless to us today, given the changes that have occurred. Our rules require the filing of child support guidelines worksheets prior to a support hearing or establishment of a support order. This rule applies with equal strength in modification proceedings.

We regret that we are unable to bring this protracted dispute to a close. Nevertheless, we find it necessary to remand this case to the district court to enable the parties to file the required worksheets and for the district court to set Douglas' child support obligation pursuant to the child support guidelines. The amount established by the district court shall apply prospectively from November 7, 1995, and shall take into consideration Douglas' brief period of unemployment following his release from prison.

The accrued amount of unpaid child support determined by applying the directions in this opinion and the monthly support obligation established by the district court on remand shall be paid by Douglas pursuant to a reasonable payment plan established by the district court.

Costs are taxed equally between the parties.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

---

restitution claim of almost $9000 against the pension fund, as well. At the time of the modification hearing, the fund was valued at approximately $31,000.