## IN THE COURT OF APPEALS OF IOWA

No. 14-0331
Filed November 26, 2014

IN RE THE MARRIAGE OF BRENT JAMIE SMITH
AND JOLEEN RENEE SMITH

Upon the Petition of
BRENT JAMIE SMITH,
        Petitioner-Appellant,

And Concerning
JOLEEN RENEE SMITH,
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Mahaska County, Randy S. DeGeest, Judge.

        Brent Smith appeals from the district court's denial of his application to modify child support. **REVERSED AND REMANDED.**

        Allen A. Anderson of Anderson Law Firm, Oskaloosa, for appellant.

        Greg A. Life of Life Law Office, Oskaloosa, for appellee.

        Considered by Danilson, C.J., and Vogel and Bower, JJ.

**DANILSON, C.J.**

Brent Smith appeals from the district court's denial of his application to modify child support. We reverse and remand for the district court to consider Brent's earning capacity, available assets, and ability to pay, as required by *In re Marriage of Walters*, 575 N.W.2d 739, 743 (Iowa 1998).

**I. Background Facts.**

Brent Smith and Joleen Smith were formerly married. They had one child. Their marriage was dissolved by decree on October 13, 2004. Under the decree, the minor child was placed in Joleen's physical care and Brent was ordered to pay $351.27 per month in child support.

On January 24, 2014, Brent filed a pro se motion to amend child support,[1] asserting he was incarcerated in a medium security facility. He stated he had no assets and was starting a job that would pay about fifty dollars per month "with 70% of that deducted (50% goes to child support and 20% to court ordered restitution)." He asked that his support be based on his prison earnings.

A hearing was held on January 31 at which Brent did not appear but was represented by counsel. Evidence indicated Brent began serving a ten-year term on November 27, 2012, with his tentative discharge date being March 12, 2017. Joleen testified Brent had informed their fourteen-year-old child he would be

---

[1] In December 2013, the state's child support recovery unit (CSRU) had received an administrative request to modify child support pursuant to Iowa Code chapter 252H (2013). According to governing rules, the CSRU gathered financial information, calculated a child support guideline amount according to the parents' actual incomes, and notified the parties as to its determination. The calculation of the CSRU is not binding, however, when a parent objects, as Joleen did here, and the district court hears the matter as an original proceeding. Iowa Code §§ 252H.3(3), 252H.8(8).

released "after New Year's."[2] She testified Brent's child support obligation was set in the decree, at which time Brent was employed. She stated, "He stopped going to work." The district court declined to modify Brent's child support obligation, finding "prior to his conviction on criminal charges and his incarceration, [Brent] voluntarily left his employment."

Brent appeals, contending his support obligation should be based on his actual earnings.

## II. Scope and Standard of Review.

We review decisions in a child support modification action de novo. *In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006). Our job is to examine the entire record and decide anew the issues raised on appeal. *In re Marriage of Beecher*, 582 N.W.2d 510, 512-13 (Iowa 1998).

## III. Discussion.

Iowa Code section 598.21C provides a court may modify child support orders "when there is a substantial change in circumstances" considering several enumerated factors, including "changes in employment, earning capacity, income, or resources of a party." Iowa Code § 598.21C(1)(a). The person seeking modification of the decree with respect to child support has the burden to show a substantial change in circumstances not contemplated by the trial court when it made its original decision. *Walters*, 575 N.W.2d at 741. The burden includes showing that continuation of the current order would create an injustice because the change in circumstances is permanent or continuous. *Id.* A

---

[2] "She advised me he wrote a letter and stated he was going to get out sometime after New Year's." She did not state when the letter was written or received.

voluntary decrease in earnings, however, does not constitute a factor that would support a modification of a parent's support obligation. *See In re Marriage of Foley*, 501 N.W.2d 497, 500 (Iowa 1993) (explaining "[t]he self-infliction rule applies equitable principles to the determination of child support in order to prevent parents from gaining an advantage by reducing their earning capacity and ability to pay support through improper intent or reckless conduct").

*Walters*, 575 N.W.2d at 742,[3] summarized prior cases in which the courts considered whether an obligor's incarceration constitutes a substantial change of circumstances justifying the modification of a support obligation:

> In *Vetternack*, the father-obligor was incarcerated following his conviction for terrorism. [*In re Marriage of*] *Vetternack*, 334 N.W.2d [761,] 762 [(Iowa 1983)]. He filed a petition for modification, alleging that his incarceration constituted a substantial change in circumstances which justified reduction of his child support obligation. Our court upheld the district court's denial of the requested modification, finding that the father had sufficient assets, $15,000 equity in his home, against which the support payments could be charged until his release from prison. *Id.* at 763.
>
> . . . .
>
> Our court of appeals has also considered whether incarceration constitutes a substantial change in circumstances. *In re Marriage of Phillips*, 493 N.W.2d 872 (Iowa Ct. App. 1992). In so doing, it extended our holding in *Vetternack* by denying a petition for modification for an incarcerated obligor who had no assets against which the support obligation could be charged. *Phillips*, 493 N.W.2d at 878. The court found that the father's incarceration did not constitute a substantial change in circumstances, noting that "[i]t would not be equitable to suspend his responsibility for his children while he is incarcerated." *Id.* Before reaching this decision, the court carefully examined decisions from various jurisdictions and found them fairly evenly divided on the issue of whether incarceration warrants a reduction in an obligor's child

---

[3] The *Walters* court concluded that an obligor's decreased earning capacity following release from prison is a factor to be considered in an action for modification of child support. 575 N.W.2d at 743. ("We find that Douglas' reduction in income and earning capacity is the result of his criminal activity which, although voluntary, was not done with an improper intent to deprive his children of support.").

support obligation. The court acknowledged the fact that the father had no assets against which the obligation could be charged during his incarceration. The court, however, concluded that fact did not justify modification, noting that a "lack of assets should not serve as a shield against a child support obligor's responsibilities." *Id.* at 877. Instead, the court relied heavily on the voluntariness of the father's crime and his alleged reckless disregard for his children's well-being. *Id.* at 877-78. While the court concluded that the father's incarceration did not warrant reduction of his support obligation, it did state that upon his release from prison, "the monthly obligation can be adjusted as his financial situation then requires." *Id.* at 879.

The *Walters* court, however, overruled the holding in *Phillips* that the obligor's lack of available assets to fulfill his support obligation while incarcerated is not a consideration in a modification proceeding. *Walters*, 575 N.W.2d at 743.

Here, the district court enforced the "self-infliction rule," finding Brent's decrease in earnings was due to his own voluntary conduct. However, "some consideration of [the obligor's] earning capacity and ability to pay *is necessary.*" *Id.* (emphasis added).

Because the district court failed to consider the necessary factors of Brent's earning capacity, available assets, and ability to pay, we reverse and remand for the appropriate analysis. Costs on appeal are assessed to appellee.

**REVERSED AND REMANDED.**