**IN THE COURT OF APPEALS OF IOWA**

No. 15-2100
Filed August 17, 2016

IN RE THE MARRIAGE OF AMETHYST NELSON
AND RYAN NELSON

**Upon the Petition of**
**AMETHYST NELSON,**
       Petitioner-Appellant,

**And Concerning**
**RYAN NELSON,**
       Respondent-Appellee.
_____

       Appeal from the Iowa District Court for Marshall County, James C.

Ellefson, Judge.


       Amethyst Nelson appeals from an order modifying the child-support

provisions of the decree dissolving her marriage to Ryan Nelson.  **AFFIRMED.**


       Barry S. Kaplan of Kaplan & Freese, LLP, Marshalltown, for appellant.

       Ryan S. Nelson, Marshalltown, appellee pro se.


       Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Amethyst Nelson appeals from the order modifying the child-support provisions of the decree dissolving her marriage to Ryan Nelson. She argues Ryan is not entitled to a reduction of his child-support obligation because he voluntarily reduced his income. Upon our de novo review, we agree modification is appropriate under the facts of this case, and we affirm.

**I. Background Facts and Proceedings.**

Ryan and Amethyst divorced in June 2013. They agreed Amethyst would receive physical care of their three children. At the time of the dissolution, Ryan worked as a supervisor at Packaging Corp. of America, where he had been employed for fifteen years and was earning approximately $60,000 per year. Based on this income, the parties agreed Ryan would pay Amethyst $1100 per month in child support.

In August 2014, Ryan quit his position at Packaging Corp. because he worked the third shift and believed his job required him to work excessive hours, both of which prevented him from spending time with his children. Thereafter, Ryan worked at Inland Truck Parts and Service, earning $15.35 per hour as a mechanic.

In June 2015, Ryan requested administrative modification of his child-support obligation pursuant to Iowa Code chapter 252H (2015). His request was denied. Ryan then requested a chapter 252H hearing for modification of a child-support order, stating in part:

> When the order was originally set, I worked nights as a supervisor and a lot of overtime, so my income was higher. Because of my work schedule at the time, I rarely saw my kids.

Because of this, I decided I needed to make a lifestyle change and get a daytime job so I could be with them as much as I could. I love my kids and want to spend as much time with them as possible. My new hourly wage is much less and overtime offered is rare. The time I get with my kids is most important, so I am trying to adjust to my new, limited financial situation. Right now, more than half of my income is going to [Amethyst].

In October 2015, approximately one month after asking for a review of his support obligation, Ryan left his job at Inland to begin a five-week program to train as an Emergency Medical Technician. However, he left the program after three weeks to begin a new job at Kapaun & Brown, earning twelve dollars per hour as a fabricator and installer, which he believed would "be better for [his] family." Though the position paid less than he had been earning at Inland, Ryan believed that "[s]ometimes you've got to go backwards to go forward" and "[i]n the long run" it would be "[a] better paying position." He told the court: "I [made] my career changes to better myself and my family for the future . . . yes, I took a lower-paying job as of now, but in the future it will be a much better paying job, and I can further support my children better." He is eligible for performance-based raises in his new job, though he did not know how much his raises would be or when he would receive them.

Following a hearing in December 2015, the district court entered its order modifying Ryan's support obligation. The court found Ryan did not reduce his income with the intention of reducing his support obligation; it found credible Ryan's claim that he reduced his income with the hope of improving his position in the future, as well as the position of his family, noting that Ryan was thirty-six years old and had thirty or more years left to earn. On this basis, the court found that it was "reasonable" for Ryan to change his employment in order to improve

"his overall future lifestyle" and that Ryan could reasonably believe that doing so would improve his long-term earning capacity. Amethyst appeals.

## II. Scope and Standard of Review.

We review orders modifying child support de novo. *See In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006). In doing so, we give weight to the trial court's fact-findings, especially those concerning witness credibility, though we are not bound by them. *See id.* "We recognize that the district court 'has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity.'" *See id.* (quoting *In re Marriage of Walters*, 575 N.W.2d 739, 740 (Iowa 1998)).

## III. Modification of Child Support.

Before the court can modify a child-support order, the party seeking modification must prove by a preponderance of the evidence that circumstances have changed substantially since the order's entry. *See Walters*, 575 N.W.2d at 741. The following criteria apply:

> (1) there must be a substantial and material change in the circumstances occurring after the entry of the decree; (2) not every change in circumstances is sufficient; (3) it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice; (4) the change in circumstances must be permanent or continuous rather than temporary; (5) the change in financial conditions must be substantial; and (6) the change in circumstances must not have been within the contemplation of the trial court when the original decree was entered.

*Id.* (quoting *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983)).

There is no dispute that the change in Ryan's income would qualify as a substantial change in circumstances for the purposes of modifying the child-

support order. *See* Iowa Code § 598.21C(2)(a) (stating "a substantial change of circumstances exists when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines"). Voluntariness in diminished earning capacity may be an impediment to modification. *See Walters*, 575 N.W.2d at 741 (stating a support order may not be modified based on a decrease in income that is self-inflicted or voluntary). "[P]arents who reduce their income through an improper intent to deprive their children of support or in reckless disregard for their children's well-being are not entitled to a commensurate reduction in child support payments." *Id.* (citation omitted). Here, the district court found Ryan did not reduce his income with an improper intent to deprive his children of support, and substantial evidence supports that finding. However, the absence of intent to deprive the children of support does not automatically entitle a parent to modification of child support. *See McKenzie*, 709 N.W.2d at 533-34. We decide to grant or deny a request for modification depending on the unique circumstances of each case. *See In re Marriage of Rierson*, 537 N.W.2d 806, 807 (Iowa Ct. App. 1995).

Modification is appropriate on the facts before us. Ryan did not leave a higher-paying position at Packaging Corp. for a lower-paying job at Inland in order to deprive his children of support but rather because it carried a non-monetary cost—a work schedule that limited his ability to see his children—while the new position afforded him better hours and more time to spend with his children. *See, e.g.*, *In re Marriage of Mylan*, No. 07-1084, 2008 WL 509081, at *1 (Iowa Ct. App. Feb. 27, 2008) (finding reduction of a child-support obligation was not foreclosed by the father's voluntary reduction in income where the

father's previous employment required him to work between fifty-five and sixty hours per week, including weekends, and his new position—though it paid less—was limited to forty-hour workweeks with weekends off). Nor did he reduce his income with malicious intent when, after quitting his job at Inland to train in a new field, he was offered and he accepted a position that paid less than Inland; Ryan believed the new job had potential to provide him with greater earnings, which would benefit his family in the long-run.

Amethyst argues modification is not appropriate because Ryan voluntarily left a higher-paying position for jobs that paid less money, citing *McKenzie*, 709 N.W.2d at 533, in support of her argument. In that case, the father reduced his earnings when he took a lower-paying job after moving out of state with his girlfriend. *See McKenzie*, 709 N.W.2d at 533. The supreme court found no reason to doubt the father's claim that the reduction in income was not motivated by any desire to deprive his children of support but rather by a desire to be with his girlfriend. *See id.* However, the court refused to base a decision to modify solely on the purity of the father's intent, stating that to do so would place the father's interests above those of the children. *See id.* at 533-34. Ultimately, the *McKenzie* court denied modification because strict application of the child support guidelines based on the father's actual earnings would result in a substantial injustice between the parties, and therefore, the court instead used the father's earning capacity to calculate his child-support obligation. *See id.* at 534.

Amethyst also cites *In re Marriage of Duggan*, 659 N.W.2d 556, 562 (Iowa 2003), to support her argument against modification. In that case, the trial court

calculated the father's child-support obligation based on the father's pension benefits, which it treated as income. *See Duggan*, 659 N.W.2d at 562. Because it was error to do so, the father requested the child support be recalculated based on his actual earnings, which would have been zero dollars due to his retirement. *See id.* The supreme court held a it would be inappropriate to do so because the father "offered no reason for his failure to obtain employment other than his desire to be retired." *See id.* The court further found the father did not suffer from any ailments or disabilities that would prevent him from earning income as he did before his retirement. *See id.* It thereby determined the father's choice to remain unemployed was voluntary. *See id.*

The facts of *McKenzie* and *Duggan* are distinguishable from the present case. Although the fathers in those cases may have lacked the intent to deprive their children when they voluntarily reduced their earnings, they did so out of their own self-interest and without regard for their children's needs. In contrast, Ryan's reasons for reducing his income are not only devoid of an intention to deprive his children of support, he did so with his children's best interests in mind. Ryan first reduced his income when he left a high-paying job with hours that prevented him from spending time with his children. He again reduced his income in order to better his position and that of his family in the future, believing that his new job would afford him that opportunity. Although Ryan is capable of working jobs that may pay more, those jobs would require he sacrifice time with his children or a more lucrative future in exchange for present earnings—both of which would be to the children's detriment. Furthermore, there is no finding that a substantial injustice would occur by using Ryan's actual earnings to calculate

his child support, and on the scant record made in the district court, there is nothing on which we can base such a finding.

We agree that Ryan has shown a substantial change in circumstance that warrants modification of his child-support obligation. Accordingly, we affirm.

**AFFIRMED.**