**IN THE COURT OF APPEALS OF IOWA**

No. 18-1621
Filed July 24, 2019

**IN RE THE MARRIAGE OF BRANDY FLEMMING-JESS
AND MATTHEW FLEMMING**

**Upon the Petition of
BRANDY FLEMMING-JESS,**
     Petitioner-Appellant,

**And Concerning
MATTHEW FLEMMING,**
     Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.


Brandy Flemming-Jess appeals from an order modifying the child-support provisions of the decree dissolving her marriage to Matthew Flemming. **AFFIRMED.**


Erin M. Carr of Carr Law Firm, Des Moines, for appellant.

David P. Kozlowski and David Barajas of Macro & Kozlowski, LLP, West Des Moines, for appellee.


Considered by Mullins, P.J., Bower, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MAHAN, Senior Judge.**

Brandy Flemming-Jess appeals from an order modifying the child-support provisions of the decree dissolving her marriage to Matthew Flemming. She argues Matthew is not entitled to a reduction of his child-support obligation because he voluntarily reduced his income. Upon our de novo review, we agree modification is appropriate under the facts of this case and we affirm.

## I.  *Background Facts and Proceedings*

Matthew and Brandy divorced in October 2014. They agreed Brandy would receive physical care of their two children. At the time of the dissolution, Matthew, a medical doctor, worked as a cardiologist and an electrophysiologist, and he was earning in excess of $500,000 per year. Brandy was employed part-time as an emergency medical technician, and she was earning less than $10,000 per year. The parties agreed Matthew would pay Brandy $3500 per month in child support.

In October 2015, Matthew suffered a cardiac arrest and diabetic seizure, resulting in neurological dysfunction, including cognitive impairment, visual and speech difficulty, and tremors. Matthew engaged in therapy, and he was eventually able to return to work with restrictions. However, in June 2016, Matthew's employer, Mason City Clinic, informed him it was not able to accommodate his restrictions. Matthew was also notified his hospital privileges were not being reinstated. Matthew continued rehabilitation, but he was informed it was unlikely he "could return to work." Nevertheless, Mason City Clinic allowed him to return to work with restrictions in October 2016. He was terminated in March 2017 after a peer reported him to the Iowa Board of Medical Examiners due to concerns about his ability to practice medicine. Since then, Matthew applied for

numerous positions but has received no interviews. Currently, his sources of income are $7000 per month and $5000 per month from two untaxed, private disability policies. Matthew applied for Social Security Disability; he was initially denied those benefits, but if granted, those benefits would offset his private disability benefits.

Meanwhile, in 2016, Brandy suffered multiple strokes and is now medically disabled. She receives Social Security Disability benefits in the amount of $17,364 per year.

In August 2017, Brandy petitioned to modify the child support provisions of the parties' dissolution decree, alleging a substantial and material change in circumstances in that she "is no longer able to work" and Matthew's child support obligation for an older child "has expired." Matthew filed a counter-claim, alleging a substantial and material change in circumstances in that his "income has decreased to such extent as there now exists a ten-percent deviation from [his] present child support obligation." In March 2018, the district court entered a temporary order modifying Matthew's child support obligation to $2500 per month.

In August 2018, following trial, the district court entered its ruling, denying Brandy's petition and granting Matthew's request for a modification of child support. The court modified the child support provisions to order Matthew to pay $2193.22 per month to Brandy, pursuant to the child support guidelines. The court ordered each party to pay their own attorney fees. Brandy appeals.

## II.    Scope and Standard of Review

We review orders modifying child support de novo. *See In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006). In doing so, we give weight to the

trial court's fact-findings, especially those concerning witness credibility, though we are not bound by them. *See id.* "We recognize that the district court 'has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity.'" *Id.* (quoting *In re Marriage of Walters*, 575 N.W.2d 739, 740 (Iowa 1998)).

### III. *Modification of Child Support*

Brandy contends the district court erred in finding a decrease in Matthew's earning capacity and income and accordingly modifying his child-support obligation. Specifically, Brandy claims Matthew's "decreased income is self-inflicted or voluntary." She argues Matthew "has not been diligent in obtaining employment" and he "has made no lifestyle changes although his income has decreased."

The district court may modify the child-support provisions of a dissolution decree when there has been a "substantial change in circumstances." Iowa Code § 598.21C(1) (2017); *In re Marriage of Reitz*, 585 N.W.2d 226, 229 (Iowa 1998). The party seeking modification must prove the change in circumstances by a preponderance of the evidence. *In re Marriage of Michael*, 839 N.W.2d 630, 636 (Iowa 2013). The following principles apply to modifications under section 598.21C:

> (1) there must be a substantial and material change in the circumstances occurring after the entry of the decree; (2) not every change in circumstances is sufficient; (3) it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice; (4) the change in circumstances must be permanent or continuous rather than temporary; (5) the change in financial conditions must be substantial; and (6) the change in circumstances must not have been

within the contemplation of the trial court when the original decree was entered.

*Walters*, 575 N.W.2d at 741 (quoting *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983)); *accord Michael*, 839 N.W.2d at 636. "In determining whether there is a substantial change in circumstances, the court shall consider," among other things, "[c]hanges in the employment, earning capacity, income, or resources of a party" and "[c]hanges in the physical, mental, or emotional health of a party." Iowa Code § 598.21C(1)(a), (e).

The district court concluded Matthew proved a substantial change of circumstances and modified the dissolution decree based on Matthew's disability income. *See also id.* § 598.21C(2)(a) (stating "a substantial change of circumstances exists when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines"). But voluntariness in diminished earning capacity may be an impediment to modification. *See Walters*, 575 N.W.2d at 741 (stating a support order may not be modified based on a decrease in income that is self-inflicted or voluntary). "[P]arents who reduce their income through an improper intent to deprive their children of support or in reckless disregard for their children's well-being are not entitled to a commensurate reduction in child support payments." *Id.* (citation omitted).

At trial, Matthew described his employment situation as "very discouraging" and testified he is "desperate to go back to work." Matthew testified he was "willing to relocate" if necessary to find employment. Similarly, one of Matthew's outpatient reports describes him as being "quite eager to return to clinical work as a

physician." Unfortunately, the evaluator further opined Matthew "should not perform any procedures or take calls." Since his termination, Matthew used retirement funds to supplement his income to meet monthly expenses. Although Matthew testified the children "are No. 1," he explained, "Currently, I have to withdraw from my retirement account to meet those expectations [of $3500 per month in child support]."

The district court found Matthew's termination from his job earning more than $500,000 per year was not voluntary on his part. As the court stated:

> In dispute in this matter is Matthew's earning capacity and whether his reduction in earnings has been voluntary. Matthew contends that he has diligently been attempting to find employment since his termination from the Mason City Clinic. He claims that his attempts have been thwarted by the reason for his termination and the current Iowa Board of Medical Examination actions pending against him. In contrast, Brandy claims that Matthew should be able to find some type of employment as a physician. She claims that Matthew is not working up to his earning capacity and that if he was so motivated Matthew could have earnings comparable to the earnings he had prior to suffering the cardiac arrest on October 11, 2015. She contends that there are other employment opportunities available for Matthew outside of his medical specialty, such as teaching, lecturing, or practicing medicine as a general practitioner or internal medicine physician. Despite these contentions, Brandy offered no evidence as to Matthew's prospective earnings as a professor, lecturer, or general practitioner or internal medicine physician.
> To dispute Brandy's claims, Matthew offered evidence of his job search records and testimony that he has sought out other employment opportunities outside of cardiology, and he has been unsuccessful at securing employment. There was no evidence offered by Brandy to support the proposition that even if Matthew were to obtain employment outside of his specialty, or even outside the scope of practicing medicine, that such prospective income would be greater than the income he receives from his private disability insurance. Even if Matthew were to obtain part-time employment, similar to his potential receipt of Social Security Disability benefits, that part-time employment income would be offset against his disability.

The court finds Matthew's explanation for his failure to find suitable employment as credible and reasonable. Given the nature of his cognitive disability and the pending complaints against him, the court believes it would be reasonable for any employer or medical facility to be hesitant to retain him. The court, therefore, finds that Matthew's loss of income was not voluntary . . . . Furthermore, the court finds that the significant reduction in pay is permanent rather than temporary in nature. Matthew's inability to find employment has lasted a year and a half. He undergoes periodic reviews by his disability carrier to prove his ongoing inability to work. Given the nature of his work and claimed disability, the court believes that his employment situation is unlikely to change in the near future.

The court finds that the child support guidelines control in this matter and a determination of Matthew's earning should be based upon his disability income. While there is no doubt that the parties and their children have grown accustomed to a certain lifestyle prior to Matthews change of employment, the change of employment experienced by both [Matthew] and [Brandy] were unforeseen and outside their control.

As with any family who suffers catastrophic medical issues, the impact on both parents and children can be dramatic. While unfortunate, the law requires the court to apply the applicable child support guidelines in this situation. Furthermore, the court finds that no substantial injustice would result from the application of the child support guidelines based upon the parties' current incomes.

We agree with the district court's conclusion that Matthew's change in income was not voluntary or self-inflicted. We observe the court found Matthew's "explanation for his failure to find suitable employment" to be "credible and reasonable," and we give deference to this finding. *See McKenzie*, 709 N.W.2d at 531 (giving weight to the trial court's fact-findings, especially those concerning witness credibility).

We conclude Matthew has shown a substantial change in circumstances that warrants modification of his child-support obligation. Accordingly, we affirm.

## IV. *Appellate Attorney Fees*

Matthew seeks an award of appellate attorney fees. An award of attorney fees is not a matter of right and rests within our discretion. *In re Marriage of*

*Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We determine whether an award is appropriate considering the needs of the party seeking the award, the other party's ability to pay, and whether the appeal required a party to defend the district court's decision. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). In light of these factors, we decline Matthew's request for appellate attorney fees. Costs on appeal are assessed equally between the parties.

**AFFIRMED.**