# IN THE COURT OF APPEALS OF IOWA

No. 22-0621
Filed December 21, 2022

IN RE THE MARRIAGE OF JEANETTE N. O'BRIEN
AND JOHN J. O'BRIEN

Upon the Petition of
JEANETTE N. O'BRIEN,
      Petitioner-Appellee,

And Concerning
JOHN J. O'BRIEN,
      Respondent-Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.

John O'Brien appeals following the denial of his petition to modify the spousal and child support provisions of his dissolution decree. **AFFIRMED AS MODIFIED AND REMANDED.**

Stephanie R. Fueger and McKenzie R. Blau of O'Connor & Thomas, P.C., Dubuque, for appellant.

Anjela Shutts and Katelyn Kurt of Whitfield & Eddy, P.L.C., Des Moines, for appellee.

Heard by Vaitheswaran, P.J., and Ahlers and Buller, JJ.

**AHLERS, Judge.**

In 2018, Jeanette and John O'Brien dissolved their twenty-one-year marriage by stipulated decree. The decree provided Jeanette with spousal support. The decree also obligated John to pay Jeanette child support. Since entry of the decree, John's employment has drastically changed. In response, John filed this modification action seeking modification of his spousal support and child support obligations.

## I.    Facts and Prior Proceedings

The parties married in 1997. John had an engineering degree. Jeanette attended Iowa State University for three and one-half years to study fashion merchandising but never graduated. John worked for John Deere since he completed an internship with the company in 1989. Jeanette worked as a receptionist until the birth of their first child. John and Jeanette would go on to have two more children. John focused on his career at John Deere and a farming operation he subsidized through his John Deere income.[1] John's base salary at John Deere was $201,000; and he regularly received significant annual bonuses.[2] Meanwhile, Jeanette focused on raising their children, caring for the family home,

---

[1] John shares his crop-farming operation with his brother and his cattle operation with his brother and another man. However, it appears he runs the farming operation as a sole proprietor and has verbal agreements with the other men to split costs and profits in equal shares.

[2] By "significant," we mean the bonuses often nearly matched or even eclipsed his base salary, as reflected in John's annual wages shown on his tax returns and his Social Security earnings statements. Those documents show wages from John Deere in the amount of $516,655.44 in 2017, $314,690 in 2018, $380,295 in 2019, and $679,230 in 2020, though his severance package accounts for $309,420 of the 2020 wage figure.

and helping on the farm. Eventually Jeanette took a part-time job providing home healthcare.

In 2017, Jeanette filed for dissolution. The parties' 2018 decree obligated John to pay Jeanette spousal support of $3500 per month until July 1, 2028, and then $3000 per month terminating on June 30, 2030. It also obligated John to pay Jeanette child support. In terms of property division, John paid Jeanette a $450,000 equalization payment and must make an additional payment of $200,000 on or before September 1, 2024. The decree also divided the parties' retirement accounts and awarded Jeanette a portion of John's John Deere pension. The farming operation went to John.

Jeanette's father passed away in 2016, but she did not receive her inheritance until after she and John divorced.[3] She used the money to pay off the mortgage on her home—a home assessed at $415,000. She also continued to work as a home healthcare worker, averaging twenty-nine hours a week at a rate of $20 per hour.

John continued to work at John Deere and the farm following the dissolution, continuing to use his John Deere income to subsidize and grow the farming operation as planned. John intended to work at John Deere until he reached sixty-two years old and then focus on the farm.[4] Through those efforts, the cattle operation has roughly doubled since the dissolution. Unfortunately, John's plan encountered a major obstacle when John Deere restructured in 2020

---

[3] Jeanette's mother passed away in 2003.
[4] John was born in 1968 and was fifty-three years old at the time of the modification trial in 2021.

and eliminated John's position, forcing his retirement. This forced retirement from John Deere occurred roughly ten years before John planned on retiring. His last day at John Deere was September 18, 2020. He received a $309,420 severance payment—equaling roughly eighteen months of his base salary but less than one year of wages when typical bonuses are considered. He invested that payment in the farming operation.

Citing the loss of his John Deere employment, John petitioned to eliminate or reduce his spousal support obligation and recalculate child support for the parties' youngest child (the only child remaining eligible for support). At trial, John claimed his income from the farming operation was significantly lower than his income when he still worked at John Deere and Jeanette no longer had a need for spousal support. Following trial, the district court determined that, although John's change in employment was not contemplated at the time of dissolution, he "has another income source that is meeting or could possibly exceed his prior capacity." The court declined to modify spousal support or child support and ordered John to pay $10,000 of Jeanette's attorney fees. In reaching this conclusion, the district court made no findings of either party's income.

John appeals.

## II. Standard of Review

We review actions to modify terms of a dissolution decree de novo. *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013). "We will not disturb the trial court's conclusions 'unless there has been a failure to do equity.'" *Id.* (quoting *In re Marriage of Wessels*, 542 N.W.2d 486, 490 (Iowa 1995)). We review an award of attorney fees for an abuse of discretion. *Id.*

## III.    Discussion

### A.    Spousal Support

First, John challenges the district court's decision to not modify the spousal support award.  Under Iowa Code section 598.21C(1) (2021), "the court may subsequently modify . . . spousal . . . support orders when there is a substantial change in circumstances."

> In determining whether there is a substantial change in circumstances, the court shall consider the following:
>    a. Changes in the employment, earning capacity, income, or resources of a party.
>    b. Receipt by a party of an inheritance, pension, or other gift.
>    c. Changes in the medical expenses of a party.
>    d. Changes in the number or needs of dependents of a party.
>    e. Changes in the physical, mental, or emotional health of a party.
>    f. Changes in the residence of a party.
>    g. Remarriage of a party.
>    h. Possible support of a party by another person.
>    i. Changes in the physical, emotional, or educational needs of a child whose support is governed by the order.
>    j. Contempt by a party of existing orders of court.
>    k. Entry of a dispositional or permanency order in juvenile court pursuant to chapter 232 placing custody or physical care of a child with a party who is obligated to pay support for a child.  Any filing fees or court costs for a modification filed or ordered pursuant to this paragraph are waived.
>    l. Other factors the court determines to be relevant in an individual case.

Iowa Code § 598.21C(1).  However, the court considers more than substantial changes in circumstance when deciding whether to modify spousal support.  To modify a decree under section 598.21C, we consider the following principles,

> (1) there must be a substantial and material change in the circumstances occurring after the entry of the decree; (2) not every change in circumstances is sufficient; (3) it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice; (4) the change in circumstances must be permanent or continuous rather

than temporary; (5) the change in financial conditions must be substantial; and (6) the change in circumstances must not have been within the contemplation of the trial court when the original decree was entered.

*In re Marriage of Walters*, 575 N.W.2d 739, 741 (Iowa 1998) (citation omitted).

John points to several changes since entry of the dissolution decree as grounds supporting modification or elimination of his spousal support obligation. At the forefront of his argument is his loss of his John Deere employment through the company's restructuring process. He highlights that both he and Jeanette had anticipated he would work an additional ten years before he retired, so this change was not contemplated at the time of the decree. John also notes it is unlikely he would be able to find employment at a comparable salary in the area and if he took a lower-paying job it would require him to hire others to complete the farm work he now does. So, he reasons it is not practical for him to work off the farm, which he claims produces less income than his John Deere job did. We agree with John that he is not required to move out of the area and away from his farm to find comparable employment, and we conclude that it is unlikely that he would be able to secure a job with comparable compensation to his John Deere job in the area. *See In re Marriage of Blum*, 526 N.W.2d 164, 165 (Iowa Ct. App. 1994) (finding loss of employment to be a change of circumstances warranting modification when payor refused to move to obtain comparably paying employment); *In re Marriage of Fidone*, 462 N.W.2d 710, 712 (Iowa Ct. App. 1990) (finding a payor's refusal to move for employment opportunities did not make loss of employment voluntary or self-inflicted).

The parties argue over John's farm income, which is currently his sole source of income other than his pension income from John Deere. We would be aided in resolving this dispute if we had a finding by the district court as to John's farm income, but we have no such finding with which to work. *See Benskin, Inc. v. W. Bank*, 952 N.W.2d 292, 307 (Iowa 2020) (noting that appellate courts are courts of review, not first view). Nevertheless, we find it largely unnecessary to resolve the disagreement over John's farm income to resolve the spousal support issue in this instance. Leading up to the original decree, the parties had a history of John using his substantial John Deere income to finance the farming operation with the expectation that the farming operation would continue to grow to the point that, when John retired from John Deere, the farming operation would support him and would become a legacy to hand down to the children. The pattern of John using his John Deere income to finance the farming operation continued after the dissolution until John lost the John Deere job. All that is to say that no matter how much the farm operation has grown—and the parties dispute that figure—the growth was contemplated when the original decree was entered. What is now missing, unexpectedly, is the $300,000 to $500,000 of John Deere income that John no longer has. We find this unexpected loss in income to be a substantial change in circumstances that was not contemplated by the parties or the district court when the original decree was entered. We also find the change to be permanent or continuous.

Our finding that there is a substantial change of circumstances that is continuous and was not contemplated by the district court at the time of entry of the original decree does not end the inquiry, as we also need to consider whether

enforcement of the original spousal support obligation would result in positive wrong or injustice. *See Walters*, 575 N.W.2d at 741. To answer that question, we note that, after looking at John's net worth and its growth, John is thriving financially. John accumulated a net worth of around $3 million by the time of the parties' divorce. He managed to increase that amount by around fifty percent to roughly $4.5 million in the time between the 2018 decree and the end of 2020. This informs us that John's financial picture is not as bleak as he claims. That said, we are mindful that much of that growth comes from the infusion of capital from John's John Deere income—a golden goose no longer available to John.

We also need to consider the change in Jeanette's financial picture to determine whether enforcement of the original decree would result in injustice. Jeanette is also not hurting financially. Since entry of the original decree, Jeanette received a sizable inheritance that enabled her to pay off the remaining debt on her $415,000 house and contribute to her investment portfolio. While Jeanette claims her inheritance was contemplated at the time of the original decree, we disagree. While the parties knew she was going to receive the inheritance, neither party knew how much she would receive. The actual amount did not become known and was not received by Jeanette until after entry of the original decree. In short, this additional infusion of assets counts in the analysis.

In addition to her inheritance, Jeanette also has investment income and receives $1828 per month from John's pension from John Deere—an unexpected early stream of income to Jeanette, given that it only came into being because of John's forced termination from John Deere. All of this is to say that we agree with John that Jeanette is also on strong financial footing. Her net worth is now over

$2 million.  She is set to receive an additional $200,000 property equalization payment from John in 2024.  She has no mortgage on her home or other debts. John's expert also explained that Jeanette can expect to receive $49,163 in annual distributions between 2022 and 2027 and $90,917 from 2028 onward from her investment portfolio without invading principal.  Jeanette's financial advisor did not significantly dispute these calculations.  Jeanette also works more than she did before the divorce and at a higher hourly rate to make roughly $29,000 per year before taxes, a significant increase from the imputed minimum wage used to calculate Jeanette's income at the time of the original decree.[5]

Given Jeanette's strong financial health coupled with the unexpected loss of John's substantial John Deere income, we conclude Jeanette no longer requires the same level of financial support from John as previously required.  *See Michael*, 839 N.W.2d at 638–39 (reducing the spousal support award when the receiving party had an improved financial situation).  Although we find there is reduced need by Jeanette and reduced ability to pay by John, we do not find it equitable to eliminate the spousal support award, as suggested by John.  Instead, we find it equitable to reduce the spousal support award to $1500 per month to be paid on the first of every month following procedendo until July 1, 2028, after which time the award shall reduce to $1000 beginning on August 1, 2028 until Jeanette turns sixty-two years old.  Consistent with the terms of the parties' stipulated decree, spousal support shall terminate upon the earliest of any of the following events: either party's death or Jeanette's remarriage.

---

[5] Jeanette makes $20 per hour and works an average of twenty-nine hours per week, grossing $580 per week.  We assume she works fifty weeks per year.

## B.     Child Support

Next, John challenges the district court's refusal to modify child support. Specifically, the court stated, "the court declines to modify the child support obligation as it was not pled in the answer filed herein."  We interpret this to be an explanation for why the court did not consider Jeanette's post-trial request for more child support.[6]   Nevertheless, we note John requested recalculation of child support in his modification petition.  So, the matter was properly before the district court, and the court should have addressed the merits of John's request.

Like spousal support, the court may modify child support upon the petitioning party establishing a substantial change in circumstances by a preponderance of the evidence.  *See* Iowa Code § 598.21C(1); *In re Marriage of Mihm*, 842 N.W.2d 378, 382 (Iowa 2014).  In determining whether to modify a child support obligation, we consider the same factors that are used to determine whether a substantial change in circumstances has occurred to modify spousal support.  *See* Iowa Code § 598.21C(1) (listing the same factors for determining whether to modify child or spousal support).  Here, the child support award in the stipulated decree was based solely on John's John Deere income and annual bonus. That income no longer exists, though John's undetermined farming income remains.  Meanwhile, Jeanette's income has increased.  To us, this amounts to a change in circumstance that is "material and substantial, not trivial, more or less permanent or continuous, not temporary, and . . . not within the knowledge or

---

[6] Jeanette sought recalculation of child support to $1445.81 per month in a post-trial statement of authorities, but she had not requested such relief in her answer to John's modification petition.

contemplation of the court when the decree was entered." *Mears v. Mears*, 213 N.W.2d 511, 515 (Iowa 1973). Moreover, there is no evidence that John left his John Deere job in an effort to avoid paying child support. *See Walters*, 575 N.W.2d at 741.

We think recalculation of child support is required. However, we are again left wondering what John's annual income from the farm actually is. The district court never determined John's annual income after he left John Deere. Instead, it stated John "has another income source that is meeting or could possible exceed his prior earning capacity." We remand to the district court to determine the parties' annual incomes and recalculate the child support award. In doing so, the district court should consider John's actual income. *See* Iowa Ct. Rs. 9.5, .14. That entails not only considering the gross revenue from John's farming operation, but also properly subtracting permissible business expenses, including straight-line depreciation. *See In re Marriage of Knickerbocker*, 601 N.W.2d 48, 51–52 (Iowa 1999) (recognizing a party may factor in straight-line depreciation when determining the party's income for child support purposes).

### C.    Trial Attorney Fees

Finally, John appeals the district court's order that he pay $10,000 of Jeanette's trial attorney fees. "In a proceeding for the modification of an order or decree under [the dissolution] chapter the court may award attorney fees to the prevailing party in an amount deemed reasonable by the court." Iowa Code § 598.36. This is permissive language, and we give the district court considerable discretion to fashion an attorney fee award. *In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999). However, those fee awards depend on the respective

parties' ability to pay and must be fair and reasonable. *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994).

We conclude the district court abused its discretion in awarding Jeanette attorney fees. The district court gave no indication that it considered the appropriate factors, what factors were considered, or why it decided to award the amount awarded. Without any such findings, we conclude the fees awarded by the district court were not fair or reasonable in this instance. It appears the district court failed to consider Jeanette's ability to pay her attorney fees, a relevant consideration. *See In re Marriage of Bolick*, 539 N.W.2d 357, 361 (Iowa 1995). Jeanette has sufficient income to pay her own fees. More critically, the district court should have determined John's income to recalculate child support and reduced spousal support in favor of John, so Jeanette should not have been considered the prevailing party. Accordingly, Jeanette should not have been able to recover attorney fees in this proceeding. *See* Iowa Code § 598.36.

## IV. Conclusion

We modify the spousal support award to $1500 per month to reduce to $1000 per month on August 1, 2028, ending at the earliest occurrence of either party's death or Jeanette's remarriage. We remand to the district court to determine the parties' annual incomes and recalculate child support. In calculating John's income, the district court shall give proper consideration to legitimate business expenses, including straight-line depreciation. We strike the award of attorney fees to Jeanette. Costs on appeal are assessed to Jeanette.

**AFFIRMED AS MODIFIED AND REMANDED.**