In re the MARRIAGE OF Richard
RIERSON and Rachel Rierson.

Upon the Petition of Richard
Rierson, Appellee,

And Concerning Rachel Rierson,
Appellant.

No. 94–1637.

Court of Appeals of Iowa.

July 25, 1995.

Susan M. Fitzsimmons, Legal Services Corporation, Mason City, for appellant.

John L. Sandy of Sandy Law Firm, P.C., Spirit Lake, for appellee.

Heard by HAYDEN, P.J., CADY, J., and SCHLEGEL, Senior Judge.*

HAYDEN, Presiding Judge.

Richard and Rachel Rierson were married in 1976. They have two children, Jeff, born October 7, 1982, and Jodi, born January 12, 1986. The Riersons were divorced in May 1988.

Richard moved to Montana in 1990 and resided with his current wife, Laura. They moved to Estherville in mid–1993. Rachel and the children moved to Prescott Valley, Arizona, in March 1988 to live with Michael Carmack. After breaking up with Carmack, Rachel moved with the children to Milford in 1991. She and Bart Thompson lived together from December 1991 to June 1993, except for one month when Ralph Wilson stayed

* Senior Judge from the Iowa Court of Appeals      serving by order of the Iowa Supreme Court.

over on weekends. The family then moved to Estherville where Randy Henderson, Rachel's current boyfriend, moved in during December 1993.

On June 23, 1994, Richard filed a petition to modify the decree seeking primary care of the children and for child support. At trial Richard introduced the testimony and report of Dr. James Simpson, a certified mental health therapist. Dr. Simpson interviewed Richard and Laura three times and the children twice. He did not interview Rachel. He administered the Bricklin Child Preference Scale to the children to objectively determine who the psychological parent is. He believed the results indicated the children, especially Jeff, did not feel safe in Rachel's home. He attributed this in part to Rachel's drinking. Dr. Simpson recommended the court seriously consider modification.

Richard also introduced evidence Rachel continued to drink on a daily basis despite taking Prozac for depression. He also tried to show he and Laura would be the better parents at fostering the children's religious development.

Rachel denied her drinking had any effect on the children. She attempted to show the children were performing well in school and had thrived during the time she was their primary caretaker.

The trial court modified the Arizona decree by awarding primary physical care of the children to Richard. The court relied heavily on Dr. Simpson's report despite being troubled by his failure to interview Rachel. The court also cited the continual change of male occupants in Rachel's home as having a detrimental effect on the children. The court ordered Rachel to pay child support and directed Richard to pay $750 toward her attorney fees.

In response to Rachel's rule 179(b) motion, the court eliminated a reference to Jodi showing a preference for living with her father, and changed its finding as to Richard's income. The court otherwise denied the motion.

Rachel appeals. She contends the trial court erred in finding a substantial change of circumstances warranted a modification. She also maintains the court abused its discretion in relying on Dr. Simpson's testimony and report since he did not interview her.

## I.  Scope of Review.

In this equity action, our review is de novo. Iowa R.App.P. 14(f)(7). This court has a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). Weight must be given to the fact findings of the trial court, especially when considering the credibility of witnesses, but the court is not bound by them. Iowa R.App.P. 14(f)(7). Prior cases have little precedential value with respect to custodial issues, and the court must make its decision on the particular circumstances unique to each case. *In re Marriage of Anderson*, 522 N.W.2d 99, 101 (Iowa App. 1994).

## II.  Expert Testimony.

Rachel argues on appeal the trial court should not have considered the expert testimony of Dr. James Simpson. However, we cannot consider this argument as she did not raise this issue in the trial court. *See State v. Traywick*, 468 N.W.2d 452, 455 (Iowa 1991) (citation omitted); *Patchette v. State*, 374 N.W.2d 397, 401 (Iowa 1985) (citations omitted). As this issue was not raised below, it was not preserved for appeal and is deemed waived.

## III.  Modification of Custody.

To change custodial provisions of a dissolution decree, the petitioner must prove by a preponderance of the evidence conditions since the decree was entered have so materially and substantially changed the children's best interest make it expedient to make the requested change. *In re Marriage of Mikelson*, 299 N.W.2d 670, 671 (Iowa 1980). The party seeking to take custody from the other must also prove an ability to minister more effectively to the children's well being. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

The trial court noted a number of changes since the parties' marriage was dis-

solved. First, the parties now live in close proximity to one another. At trial Richard testified he and his wife moved to Iowa from Montana because he was concerned with his son's school development and wanted to gain custody of the children. While not dispositive, a change in residence is certainly one factor which must be considered in determining whether there has been a substantial change in circumstances. *See* Iowa Code § 598.21(8)(f) (1993). In this case, the move evidences Richard's willingness to put his children's needs ahead of his own.

A second change is that Richard has remarried. The trial court noted Richard's stable relationship with his new wife, Laura. The trial court also stated, "Laura exhibits acceptance of the children, expresses concern for their well-being and appears to have a good relationship with them." Laura's testimony reflects these findings and reveals her mature approach to parenting. It is well-settled children need a stable and caring home environment. *See, e.g., In re Marriage of Carrico*, 284 N.W.2d 251, 254 (Iowa 1979). In Rachel's care, the children have been subjected to a series of live-in boyfriends since the dissolution. The record demonstrates the effect on the children has not always been positive. One of her boyfriends was physically abusive towards Rachel. Another had a serious alcohol problem.

A third change since dissolution is the children's lack of supervision while in Rachel's care. Both Richard and Laura testified on a number of occasions they would call the children on the phone and discover no one was supervising them. There was also third party testimony supporting this fact.

Taken together, these facts constitute a material and substantial change in circumstances since the dissolution decree. Further, Richard has proven an ability to minister more effectively to the children's well-being. Richard has the capacity and disposition to give the children love, affection, and guidance, and continue the children's education. He is able to provide for the children's basic needs. Richard's mental and physical health is satisfactory, and he is motivated to provide a stable home environment for the children.

For these reasons, we affirm the trial court on all issues presented. Costs on appeal are taxed to Rachel.

**AFFIRMED.**