# IN THE COURT OF APPEALS OF IOWA

No. 15-1872
Filed February 22, 2017

IN RE THE MARRIAGE OF RYAN ROBIDA
AND CORINA R. ROBIDA

Upon the Petition of
**RYAN ROBIDA,**
        Petitioner-Appellant,

**And Concerning**
**CORINA R. ROBIDA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Linn County, Ian K. Thornhill,

Judge.


        A father appeals the district court's denial of his petition to modify the

physical care of the parties' child.  **AFFIRMED.**


        Tara L. Hofbauer of Hudson, Mallaney, Shindler & Anderson, P.C., West

Des Moines, for appellant.

        Corina R. Robida, Cedar Rapids, appellee pro se.


        Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**VOGEL, Presiding Judge.**

Ryan Robida appeals the district court's denial of his petition to modify the physical care provision of the dissolution decree between himself and Corina Robida involving the parties' eight-year-old child. Ryan claims Corina's lifestyle, including her many moves and romantic relationships, is detrimental to the parties' child and he is able to provide a more stable, nurturing home. He also claims the court abused its discretion in refusing to keep the record open for him to provide testimony from a witness who was subpoenaed for trial but failed to appear.

**I. Background Facts and Proceedings.**

Ryan and Corina's marriage was dissolved in 2009 by a court in Missouri. The parties had one child during the marriage—a daughter, A.R.R., born in 2006—and the dissolution decree placed the child in Corina's physical care with visitation to Ryan.[1] Ryan is in the military, and in 2011, he anticipated needing to move again. He volunteered to be stationed in Iowa so that Corina and the child would be close to Corina's family. Both parties moved to the Cedar Rapids area in 2011. Then in 2012, Ryan was promoted and transferred to Ankeny. Due to Ryan's move, the parties agreed to adjust Ryan's visitation schedule to remove his midweek overnight, and the parties agreed to meet midway between their homes to exchange the child for weekend visitations. At the time of the

---

[1] The Missouri dissolution decree called for "shared joint physical custody of the child," but it provided Corina's residence would be designated as the child's residence for mailing and educational purposes, and it outlined a visitation schedule that amounts to physical care with Corina. Under the decree, Ryan had visitation with the child every other weekend and one overnight per week, and each party had three weeks of uninterrupted time in the summer.

modification trial, Ryan lived in Ankeny in a home he owns and shares with his girlfriend of three years and the girlfriend's nine-year-old daughter. Ryan anticipated retiring from the military in January 2017, but he planned to remain in Ankeny following his retirement.

Corina's life since the dissolution decree has been marked by frequent moves. In the five years since relocating to Iowa from Missouri, Corina has moved nine times, though each move has occurred in the Cedar Rapids area. Most of Corina's moves have been the result of beginning or ending a romantic relationship. In June 2011, when Corina first moved back to Iowa, she, A.R.R., and Corina's child from a prior relationship,[2] lived with Corina's mother.[3] Within weeks of relocating to Iowa, Corina moved in with Josh Asmussen, a man who Corina had known since she was a teenager. Corina soon became pregnant with Josh's child, who was born in the summer of 2012. Corina reported that Josh's behavior became erratic, and the relationship ended in early summer 2013. Corina eventually filed no-contact orders against Josh due to his behavior during visitation exchanges and after police found marijuana in his home. Corina denied Josh ever had drugs in his possession while the two lived together.[4]

After leaving her relationship with Josh, Corina, along with her three children, moved back in with Corina's mother for thirty days. Corina and the children then moved into a friend's residence for a couple of weeks until she was

---

[2] Corina's oldest child, a son, was eighteen at the time of the dissolution hearing. The child had lived with Ryan since he was six years old, and Ryan considered the child to be his son.

[3] Corina and her mother testified guests are not allowed to stay in Corina's mother's mobile home park for longer than thirty days.

[4] At the time of the modification trial, Corina and Josh had a pending custody action regarding the child they shared together.

approved for a mobile home in August 2013. Corina and the children remained in her mobile home for approximately one year. In October of 2013, Corina went to Missouri for the weekend. At the time, she had unpaid fines from a drunk driving conviction in Missouri, and she was arrested in Missouri over the weekend based on an outstanding warrant. A.R.R. remained with Ryan until Corina could resolve the Missouri warrant.

In the summer of 2014, Corina met and moved in with Nicholas Viall, who was married but separated from his wife. While Corina sent Ryan a notification in June saying that she would move into Nicholas's home as of August 30, Corina admitted to staying overnight at Nicholas's home with the children four to five nights a week as soon as Nicholas moved into the home in July.

Ryan asserted during this time, he was informed A.R.R. had head lice. He testified the lice reoccurred three more times over the next few months. He also testified the child had an untreated infected ear due to earnings she was wearing when she returned from spending three weeks with Corina during the summer break. Ryan took the child to the doctor and discovered the ear was infected with strep and MRSA. Corina testified the infection was due to "fake" earrings given to the child by Ryan's girlfriend with the instruction not to remove them.

In January 2015, Corina became pregnant with Nicholas's child and Nicholas filed a no-contact order against Corina. Nicholas testified an angry physical exchange between the two prompted the filing of the no-contact order. Nicholas stated Corina told him she would "end you and every chance you have with your family," which Nicholas believed meant she was going to destroy his life in some way. Corina also shoved him three times with open hands and hid his

off-duty weapon in a laundry basket in a closet.[5]  Neither Nicholas's nor Corina's children were present for this confrontation.  Concerned for his career as a law enforcement officer, Nicholas filed the no-contact order on the advice of his superiors.  While the no-contact order was pending, Corina stayed at her mother's house.  A short while later, Nicholas had the no-contact order dismissed, and Corina returned to Nicholas's house.  She moved out again in April 2015, into a two-bedroom condo with the children.

In May 2015, Corina went to Nicholas's wife's house.  Nicholas's wife testified Corina was yelling and screaming at her while Nicholas and her children were in the house, prompting her to contact her neighbor and the sheriff's department for safety.  During this confrontation, Corina informed Nicholas's wife that she was pregnant with Nicholas's child.  That was the last time that Nicholas and his wife attempted to reconcile,[6] and Nicholas's wife testified Corina is not welcome around her children.  However, Nicholas testified Corina is a wonderful mother and the incidents in January and May were out of character for Corina.

Ryan filed a modification petition in November 2013.[7]  The matter proceeded to trial in July 2015.  Ryan subpoenaed Josh Asmussen to testify at the trial, but Josh failed to appear.  Ryan's counsel made a motion to keep the

---

[5] Nicholas testified neither the weapon nor the magazines were loaded, and he believed Corina just wanted to get the weapon out of sight.  He had left it on the dresser after cleaning it rather than securing it in the lockbox in the closet.

[6] Nicholas's and his wife's dissolution action was pending at the time the modification action in this case went to trial.

[7] In addition to filing to modify physical care, Ryan also filed an application for rule to show cause, seeking to hold Corina in contempt for failing to give him sixty days' notice before she moved as required by the 2009 dissolution decree.  The sixty days' notice was never provided during any of Corina's moves since relocating to Iowa in 2011.  The court held Corina in contempt and required her to pay the court costs associated with the contempt action and $500 in Ryan's attorney fees.  Corina does not appeal this finding of the district court.

record open in order to obtain Josh's testimony by deposition or further hearing in court. Counsel also made an offer of proof that Josh would testify to Corina's violent episodes in front of A.R.R., placing the child and the child's younger sibling in harm's way, Corina's drug use, Corina's frequent changing of day-care providers coupled with her failure to pay day-care providers, and general concerns about Corina's parenting. The court asked counsel to submit the request in writing which Ryan did on July 10. The court denied that motion on August 31. On October 7, the court filed its ruling denying the modification petition. The court concluded Ryan proved there had been a substantial change in circumstances but had not proved he could provide the child superior care. The court stated it

> had no doubt [Ryan] is an excellent father and would provide excellent care as the child's primary caretaker. The Court also recognizes that [Corina] has found herself in some difficult circumstances since the original decree was issued, some of which her actions have contributed to making. Yet these circumstances have not resulted in [the child] being neglected by [Corina], nor have they resulted in substandard care of [the child].

However, the court did modify the visitation provision of the dissolution decree to maximize the time the child spends with Ryan due to the physical distance between the parties. The court also increased Ryan's child support in light of the parties' current incomes.

Ryan appeals the court's failure to modify the physical care and also the court's refusal to hold the record open to permit the testimony of Josh Asmussen.

## II. Modification of Physical Care.

Ryan asserts the district court was correct to find a substantial change in circumstances but incorrect in its finding that he failed to prove he could provide

superior care for A.R.R. He asserts "Corina's unstable lifestyle and detrimental behavior shows no signs of abating and will cause harm to the child in the future."

As the parent seeking to modify the physical care provision of the dissolution decree, Ryan has the burden to prove by a preponderance of the evidence that a substantial change in circumstances has occurred that make it in the child's best interests to modify custody. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). The change in circumstances must not have been contemplated by the decretal court, and it must be more or less permanent and relate to the welfare of the child. *Id.* In addition, the parent seeking the modification must prove an ability to minister more effectively to the child's wellbeing. *Id.* Our review of the district court's decision on a request to modify physical care is de novo. *Christy v. Lenz*, 878 N.W.2d 461, 464 (Iowa Ct. App. 2016). We give weight to the factual findings of the district court, including its determinations of credibility, but we are not bound by those findings. *Id.*

In this case, at the time of the dissolution decree, the parties lived in relatively close proximity to each other, making Ryan's exercise of midweek overnight visitation possible. The parties' proximity remained relatively unchanged when the parties initially moved to Iowa. However, when Ryan moved from the Cedar Rapid's area to Ankeny in 2012, it became impossible for him to exercise the midweek overnight visitation. After Ryan's move to Ankeny, Corina began a series of moves with A.R.R. and her other children all within the Cedar Rapids area. But, a custodial parent's move alone is not "sufficient to justify shifting physical care to [a] non-moving joint custodian." *Id.* at 34

(alteration in original) (citation omitted). Throughout all the moves, A.R.R. only changed schools once. In addition, she remained connected with extended family and friends.

"Our rules governing modification of decrees place 'greater importance on the stability of the relationship between [children] and the[ir] primary caregiver [than on] the physical setting of the child[ren].'" *Id.* at 34–35. But also "[i]t is well-settled children need a stable and caring home environment." *In re Marriage of Rierson*, 537 N.W.2d 806, 808 (Iowa Ct. App. 1995). In addition, there is a presumption that siblings, even half-siblings, should not be separated. *In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993). We do not take lightly the instability Corina has shown in both her relationships and residences, but as the district court noted, there is no evidence showing Corina has neglected or provided substandard care for A.R.R. In fact, there was no evidence presented that Corina's relocations or her romantic relationships at this point have had any adverse effect on A.R.R. *See id.* (noting the mother's series of live-in boyfriends had a negative effect on the children as one boyfriend was physically abusive and another one had a serious alcohol problem).

Ryan testified A.R.R.'s grades dropped at school when Corina and Nicholas had romantic trouble in January 2015, but a review of A.R.R.'s report card shows scant support for such a conclusion. Ryan was also concerned about A.R.R.'s lack of extracurricular activities, but Corina testified the lack of participation was due to Ryan's refusal to allow the activities to occur during his parenting time. Ryan also testified he believed A.R.R. does not get sufficient attention from Corina because of the other children in the home and that A.R.R.

"shuts down" and refuses to communicate when she gets into trouble or does something wrong. However, other witnesses did not voice similar concerns about A.R.R.'s behavior.

The record also contains an Iowa Department of Human Services (DHS) report[8] indicating A.R.R. did not have any mental health needs, behaved in a typical manner for a child of her age, was developmentally on target, and was "a smart, outgoing, sweet child." The report also noted A.R.R. interacted positively with Corina and was comfortable and affectionate with Corina. It was noted that A.R.R. was uncomfortable with the number of questions Ryan asks and that she does not like it when her parents fight, but otherwise, A.R.R. reported feeling safe in both parents' homes. The DHS worker was aware the modification proceeding was ongoing and, in analyzing the relationship between the parents, stated:

> Corina and Ryan need to put aside their differences and dislike for one another and co-parent [A.R.R.] effectively. [A.R.R.] is put in the middle far too often. While it is clear both parents loves their daughter, there appears to a great desire by each parent to get the other one in trouble for not following the court order, rather than working together. Corina and Ryan are not willing to be flexible for each other for the sake of [A.R.R.]. They are not able to see that [A.R.R.] is the one that will suffer in the end.

Based on our de novo review of the record, we agree with the district court that Ryan did not provide sufficient evidence to support his request to modify physical care. While he outlines his serious concerns with Corina's lifestyle, the record lacks proof that A.R.R. is at risk or has been negatively impacted by Corina's questionable choices and behavior. Although Ryan acclaims his own

---

[8] Ryan reported his concerns over A.R.R.'s head lice and infected ear to DHS, and an investigation was conducted in August 2014 that concluded A.R.R. was safe and the conditions were resolved.

ability to provide excellent care for A.R.R., he has not shown that the best interests of A.R.R. at this time make it necessary to make a change in physical care. "If both parents are found to be equally competent to minister to the child[], custody should not be changed." *Hoffman*, 867 N.W.2d at 37 (citation omitted).

## III. Evidentiary Objection.

Ryan also challenges the district court's refusal to keep the record open for the addition of Josh Asmussen's testimony. He asks that we remand the case to reopen the record to hear Josh's testimony or grant an entirely new trial. We review for abuse of discretion the district court's decision to grant or deny a request to reopen the record. *Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621, 634 (Iowa 1996).

> No rigid or fixed formula should be employed to determine when a motion to reopen is proper, since the trial court can best determine what is necessary and appropriate to achieve substantial justice. Thus a trial court has broad discretion to allow a party to reopen the case and to present additional evidence, whether it does so after a party rests, after the close of all the evidence, or even after having directed a verdict for one party.

75 Am. Jur. 2d *Trial* § 301 (2007).

Ryan wished to call Josh to testify regarding Corina's parenting during the time Josh lived with Corina, A.R.R., and Corina's son. Ryan's counsel asserted Josh had been served with a subpoena to testify and had been in contact with Ryan's counsel after he was subpoenaed, but Josh failed to show on the day of trial. Counsel asked for the record to remain open so that a perpetuation deposition could be taken and submitted or an additional trial day could be scheduled. In response to the court's inquiry, Corina stated Josh told her that he

could not exercise his parenting time with their child because he was going to be out of town the week of trial.

The court asked for the parties to file written arguments on the issue. In the written motion, Ryan's counsel informed the court that Josh had informed her a week before trial of his desire to go on a previously scheduled trip out of state. Josh had asked counsel whether there was another way he could appear, but counsel informed him he must come to trial. In her resistance, Corina's counsel asserted the subpoena was not timely served on Josh and she would be prejudiced by this late evidence as she would need to recall her witnesses to rebut Josh's testimony.

It appears Ryan's counsel was aware a week before trial of Josh's scheduling conflict with appearing on the day of trial and his desire to offer his testimony by alternate means. The court had heard from a multitude of witnesses over two days and other witnesses were privy to the information Ryan sought to solicit from Josh, including Corina's son, who lived with Corina, Josh, and A.R.R. In light of the need for timely finality in this dispute over the physical care of the parties' child, we cannot find the court abused its broad discretion in denying Ryan's motion to keep the record open.

We affirm the district court's denial of Ryan's petition to modify the physical care provisions of the dissolution decree.

**AFFIRMED.**