In re the MARRIAGE OF Timothy R. McKENZIE and Dolores M. McKenzie.

Upon the Petition of Timothy R. McKenzie, Appellant,

and

Concerning Dolores M. McKenzie n/k/a Dolores M. Guest, Appellee.

No. 05–0106.

Supreme Court of Iowa.

Feb. 3, 2006.

Lori A. Ubbinga, Sioux City, for appellant.

Edward J. Keane of Gildemeister & Keane, L.L.P., Sioux City, for appellee.

WIGGINS, Justice.

In this appeal, we must decide if our court of appeals was correct when it used a parent's actual earnings to reduce his child support obligation when he voluntarily terminated his prior employment, moved to another state, and took a job with less compensation. Because using the parent's actual earnings to determine his child support obligation under our child support guidelines would not provide for the needs of his child and result in a substantial injustice between the parties, his earning capacity should be used instead of his actual earnings to determine his child support obligation.

## I. Prior Proceedings.

Timothy McKenzie and Dolores McKenzie n/k/a Dolores Guest were married on June 16, 1979. Timothy and Dolores have three children. On August 24, 1998, the district court dissolved their marriage. The decree adopted the provisions of a written stipulation between Timothy and Dolores. Relevant to this appeal, the stipulation provided Timothy and Dolores were to keep the other advised of their telephone numbers, Timothy was to pay $495 per month in child support for one child, Timothy was to maintain health insurance on the children through his employment, and each party would pay one-half of the necessary health expenses not covered by insurance.

In 2002, the district court modified the original decree, establishing Timothy's obligation to pay a one-third share of a post-secondary education subsidy for the middle child, Montana. In September 2003, Dolores filed an application for rule to show cause why Timothy should not be punished for contempt, stating he knowingly and willfully failed to pay his one-third share of Montana's post-secondary education subsidy, failed to pay his one-half share of certain medical and dental expenses, and refused to provide her with a health insurance card for the children after changing carriers. She also requested Timothy be required to pay her attorney fees.

Timothy resisted the application for rule to show cause and alleged he was unable to pay the medical bills and he was no longer able to obtain health insurance at a reasonable cost. He also filed a petition to modify the decree asking the court: (1) to decrease his child support obligation for Kilie, the youngest child, stating "there has been a substantial and material change of circumstances" because his income decreased and Dolores's income increased

resulting in a ten-percent deviation in the child support he owed under the child support guidelines; and (2) to relieve him of the obligation to pay a post-secondary education subsidy for Montana alleging Montana failed to provide Timothy with grade reports and repudiated Timothy. He also requested Dolores pay his attorney fees.

At the conclusion of the evidentiary hearing, the district court found Timothy in contempt for failing to pay child support and his share of a medical bill for Kilie. Timothy purged himself of contempt by making payment on those obligations. After giving the parties time to file briefs, the district court did not find Timothy in contempt for his failure to pay Montana's post-secondary education subsidy on the basis Montana no longer qualified for a post-secondary education subsidy due to his failure to maintain a cumulative grade point average in the median range or above during his first year of college. The court found Timothy in contempt for failing to pay his share of an orthodontia bill for Montana, failing to maintain health insurance on Kilie through his employment, and failing to provide his new telephone number to Dolores.

On Timothy's modification petition, the court determined there had been a substantial and material change of circumstances because Montana did not maintain the requisite cumulative grade point average; therefore, Montana no longer qualified for a post-secondary education subsidy. The court modified the decree by relieving Timothy of that obligation. The court denied Timothy's application to modify his child support obligation for Kilie because Timothy "voluntarily quit his employment and as such this voluntary reduction of income cannot be a basis for a modification of his child support." Finally, in regards to attorney fees, the court found even though Dolores was in a better financial position than Timothy, he should be responsible for a portion of Dolores's attorney fees in view of her need to pursue the contempt actions and awarded her attorney fees of $1000.

In response to a post-trial motion filed by Dolores, the court entered a second ruling and order requiring Timothy to reimburse Dolores in the amount of $1144.02 for insurance costs paid by her and increasing Dolores's attorney fee award to $5000. Timothy appealed.

We transferred the case to our court of appeals. The court of appeals found Timothy had the ability to pay and affirmed on the issue of his contempt for failure to pay child support and his share of medical expenses, as well as his failure to give Dolores his new telephone number. The court of appeals reversed on the issue of Timothy's contempt for failure to maintain health insurance because the order to do so "was neither definite nor certain with reference to Timothy's responsibility to maintain insurance when it was not available to him through his employment," but affirmed the judgment against him for the insurance costs paid by Dolores.

In regards to the modification, the court of appeals reversed the district court's ruling on the issue of reducing Timothy's child support obligation because it found he did not voluntarily quit his job with the intent "to deprive his [child] of support or had a reckless disregard for [her] well-being." The court of appeals applied the child support guidelines to the parties' actual earnings and reduced Timothy's child support obligation to $200.17 per month. The court of appeals affirmed on the issue of attorney fees and awarded no attorney fees on appeal.

■ Dolores seeks further review of the court of appeals decision reversing the district court's denial of Timothy's application to modify the decree by reducing his child support obligation. Even though Dolores

seeks further review of only that part of the court of appeals decision, "we have the discretion to review any issue raised on appeal regardless of whether such issue is expressly asserted in an application for further review." *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005). In exercising our discretion, we will only review the modification action relating to the amount of Timothy's child support obligation.

## II. Scope of Review.

 "Our scope of review of a child support modification action is de novo." *In re Marriage of Walters*, 575 N.W.2d 739, 740 (Iowa 1998). Although we give weight to the findings of fact made by the district court, especially as to the credibility of witnesses, we are not bound by those findings. *Id.* at 741. "We recognize that the district court 'has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity.'" *Id.* (citation omitted).

## III. Statutory Framework.

At the time of this modification action, the Iowa Code provided in part:

Subject to 28 U.S.C. § 1738B, the court may subsequently modify orders made under this section when there is a substantial change in circumstances. In determining whether there is a substantial change in circumstances, the court shall consider the following:

a. Changes in the employment, earning capacity, income or resources of a party.

b. Receipt by a party of an inheritance, pension or other gift.

c. Changes in the medical expenses of a party.

d. Changes in the number or needs of dependents of a party.

e. Changes in the physical, mental, or emotional health of a party.

f. Changes in the residence of a party.

g. Remarriage of a party.

h. Possible support of a party by another person.

i. Changes in the physical, emotional or educational needs of a child whose support is governed by the order.

j. Contempt by a party of existing orders of court.

k. Other factors the court determines to be relevant in an individual case.

Iowa Code § 598.21(8) (2003).[1] The Code also contained an additional ground for modification of child support. It reads in part:

Subject to 28 U.S.C. § 1738B, but notwithstanding subsection 8, a substantial change of circumstances exists when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines established pursuant to subsection 4 . . . .

*Id.* § 598.21(9).[2]

Timothy bases his modification of child support action on section 598.21(9). Ac-

---

**1.** The legislature has reorganized section 598.21 by separating its various subsections into separate sections of the Code. *See* Iowa Code §§ 598.21–598.21G (Supp.2005). Section 598.21(8) is now contained in section 598.21C, entitled "Modification of child, spousal, or medical support orders." *Id.* § 598.21C. The quoted portion of section 598.21(8) is now contained in section 598.21C(1), entitled "Criteria for modification." *Id.* § 598.21C(1).

**2.** Section 598.21(9) is now contained in section 598.21C(2), entitled "Additional criteria for modification of child support orders." Iowa Code § 598.21C(2) (Supp.2005).

cordingly, we must look to "the most current child support guidelines established pursuant to subsection 4" to determine if a ten-percent variation exists. *Id.* Subsection 4 requires the supreme court to "maintain uniform child support guidelines." *Id.* § 598.21(4).[3] In applying the guidelines to establish a parent's child support obligation

consideration shall be given to the responsibility of both parents to support and provide for the welfare of the minor child and of a child's need, whenever practicable, for a close relationship with both parents. There shall be a rebuttable presumption that the amount of child support which would result from the application of the guidelines prescribed by the supreme court is the correct amount of child support to be awarded. A variation from the guidelines shall not be considered by a court without a record or written finding, based on stated reasons, that the guidelines would be unjust or inappropriate as determined under the criteria prescribed by the supreme court.

*Id.* § 598.21(4)(*a*).[4]

Our guidelines incorporate these legislative mandates. Our guidelines state:

The purpose of the guidelines is to provide for the best interests of the children by recognizing the duty of both parents to provide adequate support for their children in proportion to their respective incomes. While the guidelines cannot take into account the specific facts of individual cases, they will normally provide reasonable support.

Iowa Ct. R. 9.3. The guidelines further provide:

In ordering child support, the court should determine the amount of support specified by the guidelines. There shall be a rebuttable presumption that the amount of child support which would result from the application of the guidelines prescribed by the supreme court is the correct amount of child support to be awarded. That amount may be adjusted upward or downward, however, if the court finds such adjustment necessary to provide for the needs of the children and to do justice between the parties under the special circumstances of the case.

*Id.* r. 9.4.

## IV. Factual Findings.

On our de novo review of the record, we determine the facts relevant to this appeal to be as follows. At the time of the original dissolution, Timothy's gross annual income was $32,240 and Dolores's gross annual income was $40,300. At the time of this modification action, Dolores's income had increased to $88,900, and Timothy's income had decreased to $21,199 because he left the state of Iowa and moved to South Carolina.

Prior to his move to South Carolina, Gelita USA employed Timothy for twenty-two years. His income on his 2003 tax return was $32,634. He worked at Gelita until the first week of September in 2003. He worked in South Carolina for one month in 2003. By subtracting one month of Timothy's South Carolina income from the income on his 2003 tax return and then annualizing his income at Gelita, Timothy's annual income would have been $45,260 if he had continued to work at Gelita. In February 2003, Timothy's then girlfriend Teresa moved to South Carolina. Prior to moving, she had been earning around

---

3. Section 598.21(4) is now contained in section 598.21B. Iowa Code § 598.21B (Supp. 2005).

4. Section 598.21(4)(*a*) is now contained in section 598.21B(2)(*a*), (*b*)(1), (*c*)-(*d*) and 598.21B(3). Iowa Code § 598.21B(2)-(3) (Supp.2005).

$24,000 annually in Iowa. Therefore, in Iowa, Timothy and Teresa's combined annual income would be $69,260.

Teresa found a job in South Carolina paying $44,500 annually. Although Timothy did not have another job lined up, in September 2003 he moved to South Carolina because he wanted to be with Teresa. Timothy and Teresa were formally married in September. From September to November, Timothy looked for employment at an income level comparable to what he was earning in Iowa. Having no success, he took a job with the State of South Carolina at the Department of Health and Environmental Control on December 1, 2003. Timothy and Teresa's combined annual income in South Carolina is $65,699.

## V. Analysis.

█ Using Timothy's gross annual income of $21,199, his net monthly income under our child support guidelines is $1108. Using Dolores's gross annual income of $88,900, her net monthly income under our child support guidelines is $5297. These net monthly incomes require Timothy to pay 18.5% of his net monthly income or $205 per month in child support for Kilie. $205 is more than ten percent less than the $495 he was required to pay under the original decree. Thus, if we use Timothy's actual income, a substantial change of circumstances exists under section 598.21(9). Our analysis, however, does not end here because Dolores claims we should not use Timothy's actual earnings to determine his child support obligation under the guidelines.

█ Although our courts are required to use the child support guidelines to determine a parent's child support obligation, the child support indicated by a strict application of the guidelines to a parent's income only creates a rebuttable presumption that the child support resulting from

the application of the guidelines is a just and appropriate amount. Iowa Code § 598.21(4)(*a*); Iowa Ct. R. 9.4. If a strict application of the guidelines would be unjust or inappropriate, a court may adjust the guideline support amount upward or downward if such adjustment is "necessary to provide for the needs of the children and to do justice between the parties under the special circumstances of the case." Iowa Code § 598.21(4)(*a*); Iowa Ct. R. 9.4. One of the factors we consider in determining if we will use a parent's earning capacity, rather than a parent's actual earnings, in order to meet the needs of the children and do justice between the parties is whether the parent's inability to earn a greater income is self-inflicted or voluntary. See *In re Marriage of Duggan*, 659 N.W.2d 556, 562 (Iowa 2003) (citation omitted) (stating "[u]nder our case law, 'a party may not claim inability to pay child support when that inability is self-inflicted or voluntary' "). We may also consider Timothy and Teresa's combined income to determine whether a strict application of the guidelines would result in a substantial injustice. See *State ex rel. Reaves v. Kappmeyer*, 514 N.W.2d 101, 104–05 (Iowa 1994) (determining parents' incomes for purposes of the child support guidelines without regard to the incomes of others, and then only considering such additional funds in evaluating "whether awarding the guideline amount would result in a substantial injustice" warranting departure from the guidelines).

Timothy claims the reason he voluntarily left his employment at Gelita was to join Teresa in South Carolina, and not to avoid his child support obligation to Kilie. We have no reason to believe otherwise and recognize Timothy's desire to move and continue his relationship with Teresa is only natural. However, our first consideration under these circumstances is not what is in the best interest of Timothy, but

what is in the best interest of his child. If we consider Timothy's reason for moving as the primary consideration in deciding this case, we would place his selfish desires over the welfare of his child and the custodial parent, not provide for the needs of his child, and create a substantial injustice between the parties.

Timothy was not free to plan his future without regard to his obligation to his former wife and child. At the time Timothy left Iowa, he knew he had a pre-existing duty to provide monthly child support in the sum of $495 for his daughter and that he could earn $45,260 annually if he stayed in Iowa. Even though he thought he could earn a comparable salary in South Carolina at the time he quit his job in Iowa, he had no idea what his earning capacity in South Carolina would be. Under these circumstances, Timothy's desire for self-fulfillment is outweighed by the pre-existing duty he had to his former spouse to provide adequate support for his minor child.

Timothy also claims his new job and expenses would not allow him to pay child support based on an income other than his actual earnings. Even if true, under the special circumstances of this case we should still base Timothy's child support obligation on his earning capacity. Although Timothy's income dramatically declined, he was able to make the move to another state without a change in his and Teresa's lifestyle because their combined income in South Carolina is substantially the same as what their combined income would have been if they stayed in Iowa.

Finally, if we were to allow a reduction in Timothy's child support obligation based on his actual earnings, we would be requiring Dolores to increase her contribution for the support of Kilie. Dolores should not be forced to make up Timothy's reduced child support so Timothy can start a new life with his new wife in South Carolina, when his combined family income in South Carolina is substantially similar to the combined family income he had available to him in Iowa.

Consequently, a strict application of the child support guidelines using Timothy's actual earnings under the circumstances of this case would not provide for the needs of his child and would result in a substantial injustice between the parties. Therefore, it is necessary to use Timothy's earning capacity to determine his child support obligation under our guidelines.

■ Having concluded we must use Timothy's earning capacity to establish his child support obligation, we must now determine Timothy's earning capacity. *In re Marriage of Nelson,* 570 N.W.2d 103, 106 (Iowa 1997). The best indication of Timothy's earning capacity is the salary he made at Gelita before he quit to move to South Carolina because he worked there for twenty-two years and we find at the time he quit there was no indication that he could not have continued in this position for the period he was obligated to provide child support for Kilie. Thus, we fix his earning capacity at $45,260.

Using $45,260 as Timothy's gross annual income for the purpose of determining child support under the child support guidelines, his net monthly income is $2819. Dolores's net monthly income under the child support guidelines remains at $5297. These net monthly incomes require Timothy to pay 17.2% of his net monthly income or $485 per month in child support for Kilie. $485 does not vary more than ten percent from the amount of Timothy's child support obligation set by the original decree. Accordingly, a substantial change of circumstances does not exist under section 598.21(9) and Timothy is not entitled to a reduction in his child support obligation.

## VI. Disposition.

Because it is necessary to use Timothy's earning capacity in determining his child support obligation under our child support guidelines to provide for the needs of Kilie and do justice between the parties under the special circumstances of this case, we vacate the decision of the court of appeals and affirm the judgment of the district court as to the child support issue raised by Timothy in his modification petition. We otherwise affirm the decision of the court of appeals. Accordingly, we remand this case to the district court to enter judgment consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED IN PART AND AFFIRMED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**