# IN THE COURT OF APPEALS OF IOWA

No. 19-0471
Filed November 27, 2019

**IN RE THE MARRIAGE OF CASSIE ROWAN SEMERAD AND AUSTIN JOSEPH SEMERAD**

**Upon the Petition of**
**CASSIE ROWAN SEMERAD, n/k/a CASSIE JORDAN,**
    Petitioner-Appellant,

**And Concerning**
**AUSTIN JOSEPH SEMERAD,**
    Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Dallas County, Randy V. Hefner,

Judge.


        Cassie Jordan appeals from the order modifying the decree dissolving her

marriage to Austin Semerad.  **AFFIRMED IN PART, MODIFIED IN PART, AND**

**REMANDED.**


        Cynthia Ann Bahls of The Law Shop by Skogerson McGinn, LLC, Van

Meter, for appellant.

        Austin Joseph Semerad, Des Moines, self-represented appellee.


        Considered by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

Cassie Semarad, now Cassie Jordan, appeals from the order modifying the decree dissolving her marriage to Austin Semarad. Cassie argues the court's ruling, which modified not only the visitation provisions of the decree but also the child-support and legal-custody provisions, went beyond the relief requested by either party. She also challenges the visitation graduated timeline and the amount of child support ordered. We affirm in part, modify in part, and remand.

**I. Background Facts and Proceedings.**

Cassie and Austin were divorced on April 20, 2015. The dissolution decree ordered joint legal custody and shared physical care of the parties' two minor children; Z.S., born in 2010, and M.S., born in 2011. Their post-dissolution relationship has been marked by on-going judicial intervention.

The dissolution decree was first modified on August 30, 2016. In the modification ruling, the court found:

> (5) After the decree was entered, [Austin] threatened to assault [Cassie] and has harassed her. The parties have had difficulty reasonably communicating with each other and co-parenting their children since the decree was entered.
> (6) A protective order by consent agreement was entered in Polk County which provide[d] that Austin not threaten, assault, stalk, molest, harass, other otherwise abuse Cassie, and the order restricted communication between the parties to matters affecting the parties' children only and that all communication be sent through a third party. [Austin] entered a plea of guilty to a charge of harassment in the [second] degree, and received a deferred judgment on March 15, 2016.

The court modified the decree to provide Cassie sole legal custody and physical care of the children. The order set out a number of specifics concerning access to information, parental responsibilities, and visitation. Austin's scheduled

parenting time was to be on alternating weekends from Friday at 5:00 p.m. to Sunday at 5:00 p.m., and every Wednesday overnight from 5:00 p.m. until Thursday, when Austin would take the minor children to school or return them to Cassie by 8:00 a.m. Austin was to pay $987.96 monthly in child support.

On September 21, 2017, the district court entered an order modifying the protective order, eliminating Austin's Wednesday overnight parenting time, providing Wednesday visits would be from after school to 7:30 p.m., and reducing alternate weekend visits from Saturday at 8:00 a.m. to Sunday at 6:00 p.m. Cassie and Austin were ordered to participate in joint counseling and treatment to address parenting communication issues. Austin was ordered to direct his psychiatrist to prepare and file a report detailing his psychiatric care and treatment for the court. The protection order was modified in a few respects, including allowing the parties to text or e-mail each other about the children. The court ordered a review hearing scheduled for mid-January 2018, which was later rescheduled for February 22, 2018. The review hearing was then cancelled upon a report by the parties' counselor that "the parties are making excellent progress in counseling and are desirous of voluntarily continuing counseling."

On March 30, 2018, the parties' filed a stipulation reducing Austin's child support to $800 per month. For reasons not apparent in the record, the court did not enter a ruling on the stipulation.

On April 15, Austin had the children overnight and Cassie received a call from Austin's paramour, stating she needed to come pick up the children. When Cassie arrived at Austin and his paramour's residence, the apartment was in substantial disarray, and Cassie learned Austin had been arrested. Austin was

subsequently charged with harassment, theft, and false imprisonment related to the April 15 incident with the paramour.

On April 17, Cassie sought and obtained a temporary domestic-abuse protective order against Austin. After a hearing was held on May 22, the district court entered a permanent domestic-abuse protective order and Austin's visitation was to be at Cassie's sole discretion. Cassie informed Austin she would allow supervised visits after he obtained appropriate treatment for his mental-health issues.[1]

On June 5, Austin filed an application to show cause in the dissolution proceeding, asserting Cassie was in violation of the decree by not allowing him visits with the children.

On June 25, Cassie filed a petition to modify the dissolution decree, requesting a modification of the visitation and support provisions. On Cassie's application, the district court appointed an attorney, Molly McPartland, to represent the minor children.

At a July 6 review hearing concerning the domestic-abuse protective order, the district court ruled that the issue of visitation would be determined in the modification action. The protective order was to remain in effect until modified in the modification action.

A scheduling hearing was held on July 17 in the dissolution modification proceeding. Austin, who was self-represented, did not participate despite several

---

[1] Austin has been affected by depression for much of his life, at times being unable to get out of bed for days on end, and at times subject to bouts of an explosive temper. He was involuntarily hospitalized twice in early 2018.

attempted telephone calls. Trial was set for February 14. The scheduling order provided: "The only contested issues for trial are: Child Support [and] Visitation."

In his July 19, 2018 answer to the modification petition, Austin states:

> While [Austin] agrees with [Cassie's] opinion that the best interests of the minor children would be served by a modification of visitation, it is apparent that [Austin] and [Cassie] have opposing opinions of how visitation should be modified. [Austin] is requesting his visitation schedule to be modifying to align with the liberal and reasonable visitation outlined in the court's Findings of Fact and Conclusions of Law in its Ruling and Order Modifying Decree filed on August 30, 2016. Furthermore, [Cassie], and the undersigned attorney for [Cassie], are lacking the legal standing to make assertions about the best interests of the children for the court's consideration. The children are represented by Kids First Law Center, which will represent the interests of the children.

On the morning of trial, February 14, 2019, the parties filed a partial stipulation agreeing it was in the best interests of the minor children to spend time with Austin "on a graduated parenting schedule" set out in six phases—phase 1 involved supervised parenting time at a supervised visitation center; phase 2, Austin would have four hours of unsupervised visitation in a public location; phase 3, Austin would have unsupervised parenting time from 9:00 a.m. to 5:00 p.m. on alternating Saturdays; phase 4, increased unsupervised parenting time to 9:00 a.m. to 5:00 p.m. on alternating Saturdays and Sundays; phase 5, unsupervised overnights on alternating weekends; and phase 6, added midweek visitation after school.

Cassie's counsel stated, "The parties have reached a partial stipulation regarding a phased visitation schedule, a graduated schedule. The parts that we have not reached an agreement on then, Your Honor, are the length of time for each phase, and any safeguards or other provisions related to those phases." The

court asked each party to state their proposals. Cassie argued phase 1 should last a year, or at least twenty supervised visits; four visits or two months under phase 2; six months under phase 3; three months under phase 4, six months under phase five; and then phase 6 would be in effect. Austin argued each phase should last one and one-half to two and one-half months. Counsel for the children asked that the each transition "occur at such time as the children's therapist [Megan Wych] indicates that it's a good idea."

The court approved the partial stipulation of the dissolution decree and proceeded to hear evidence on the application to modify the decree, as well as on Austin's motion for rule to show cause. Following the presentation of evidence and the parties' post-trial filings,[2] the court entered a ruling in which it stated:

> I am well aware that exposing children to domestic violence is harmful to them. But of significance in all of these situations and all of these legal proceedings is the absence of any allegation that Austin has physically harmed or threatened physical harm to his children. As Cassie testified at trial, she has never been concerned about the children's physical safety when in Austin's care.
> According to Austin, he has suffered from mental illness since age nine. Again according to Austin, his primary diagnosis is depression. Other secondary diagnoses are not apparent from this record. Based on this record, his illness manifests in episodic violence or threats of violence. It has never manifested in physical violence directed at the children. He has been treated for mental health issues by a psychiatrist, Dr. Gaylord Nordine, for several years.
> Austin has not seen his children for ten months. Iowa law requires that each parent have reasonable liberal access to his or her children consistent with the children's best interest. That has not happened.
> The children are currently seeing counselor Megan Wych biweekly. Cassie testified that she expects to continue with this counseling. Cassie requests that the children attend at least two sessions with Ms. Wych before the reunification process begins.

---

[2] Austin's direct testimony was primarily presented through questioning by the district court.

Cassie also requests that joint counseling with Mary Jankowski be ordered. The parties had participated in joint counseling pursuant to the court's September 27, 2017 order but that counseling ended after April 15, 2018. Cassie accuses Austin of not being truthful in these sessions, and Austin has expressed distrust of Jankowski, evidenced in part by his filing of an application that she be held in contempt of court. Though the parties may agree to joint counseling voluntarily, I will not order that this continue.

The parties signed and filed a partial stipulation immediately before the commencement of trial. They have agreed to a modification of the previous custody order to transition Austin back to an overnight visitation schedule. The parties were not able to agree upon a tentative timeline for this transition or conditions precedent to a transition through the continuum. They left that for the court.

Thus my job is to establish a timeline and conditions for this transition consistent with the best interests of the children and Austin's right to see his children. Given the time that has already elapsed, and the mandate of Iowa law that parents are entitled to reasonable and liberal access to their children, the timeline will anticipate a restoration of visitation sooner rather than later.

The court then specified a schedule for graduated visitation. The first transition would occur "[a]s soon as the minor children's therapist indicates that the children are ready to progress to Phase 2, or after four (4) supervised visits at Mosaic Family Counseling, whichever occurs sooner." Then, "[p]hase 2 visits shall last until such point as the children's therapist indicates that the children are ready to advance to phase 3, but in no event shall phase 2 last longer than two (2) months encompassing four (4) visits under this phase." Phase 3 would last eight weeks, i.e., four visits on alternating weekends. Phase 4 would last eight weeks, and phase 5 would last twelve weeks. At that point, phase 6 would be invoked.

The court also set out the following "conditions":

(1) Austin shall continue with counseling and therapy as recommended by his psychiatrist, follow all recommendations, and remain med-compliant.

(2) Austin shall follow all terms of probation until discharged.

(3) Austin shall promptly inform Cassie and the children's attorney of any arrests, hospitalizations, or changes in residence.

(4) Austin shall continue to exert reasonable efforts to obtain employment.

(5) Austin shall secure a residence suitable for young children at least by the time he is exercising overnight visitations.

(6) Cassie shall not alter the transition schedule without court approval or Austin and the children's attorney's written consent.

(7) Cassie shall not withhold the children from the scheduled time with Austin absent an emergency directly affecting the safety of the children. If this occurs, Cassie must promptly file the appropriate motions or pleadings for court review of the alteration of the schedule.

(8) Austin's status as a joint legal custodian of the minor children will be re-established upon certification that phase 5 has been completed.

(9) This order will be filed in [the domestic abuse case], and the protective order in that case is hereby modified consistent with the terms of this order.

The court dismissed Austin's motion for rule to show cause, modified Austin's support order to $800 per month retroactively pursuant to the parties' March 30, 2018 stipulated filing. Effective upon the filing of the modification order, the court modified Austin's child support to $50 per month.

Cassie appeals.

## II. Scope and Standard of Review.

Our review of an order modifying custody is de novo. *See In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). We give weight to the fact-findings of the district court, particularly concerning witness credibility, but we are not bound by them. Iowa R. App. P. 6.904(3)(g).

## III. Discussion.

*A. Modification of custody.* Cassie asserts the district court should not have modified legal custody where no request to modify legal custody was made. We agree.

The petition to modify asked that the court "modify the parties' most recent ruling and order of September 21, 2017, and order supervised visitation and parenting time with [Austin] that will ensure the minor children's health, safety, welfare and best interests" and order child support in accordance with the Iowa Child Support Guidelines. In his answer, Austin also asked that the court modify the September 2017 ruling and "order the visitation and parenting time granted to [Austin] reflect the court's ruling and order from August 2016." Legal custody was not an issue before the court.[3] We therefore eliminate paragraph 8 of the "conditions" set out verbatim above.[4]

*B. Graduated Timeline.* Cassie contends the court's graduated timeline overemphasized the fact that Austin had never physically harmed the children and gave inadequate weight to the emotional and mental harm the children experienced.

We are not persuaded the court's ruling does not adequately consider the children's best interests. *See* Iowa R. App. P. 6.904(3)(o) ("In child custody cases, the first and governing consideration of the courts is the best interests of the child."). The court acknowledged domestic abuse posed the threat of harm to children, acknowledged the children were in therapy, and provided for input from their therapist. The mother testified the children were in therapy. However, she also stipulated visitation with their father was important. The structured transition and conditions placed upon Austin evince the court's consideration of the

---

[3] The August 2016 modified decree placed the children in Cassie's sole legal custody.
[4] Because we strike the provision, we need not address Cassie's additional argument concerning modification of legal custody.

children's well-being. We find no failure to do equity. *See In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006) ("We recognize that the district court 'has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity.'" (citation omitted)).

*C. Child support modification.* "In Iowa, child support is calculated using the child support guidelines." *In re Marriage of Erpelding*, 917 N.W.2d 235, 245 (Iowa 2018); *see* Iowa Code § 598.21B; Iowa Ct. R. 9.2. "To compute the guideline amount of child support," the district court must first compute the adjusted net monthly income of each parent. Iowa Ct. R. 9.14. That amount is ascertained by first determining each parent's gross monthly income and then subtracting specified taxes and deductions. *See* Iowa Ct. R. 9.14(1). Gross monthly income is the "reasonably expected income from all sources." Iowa Ct. R. 9.5(1).

The guidelines "provide for the best interests of the children by recognizing the duty of both parents to provide adequate support for their children in proportion to their respective incomes." Iowa Ct. R. 9.3(1). There is a "rebuttable presumption that the amount of child support which would result from the application of the guidelines prescribed by the supreme court is the correct amount of child support to be awarded." Iowa Code § 598.21B(2)(c); Iowa Ct. R. 9.4. The child support award "may be adjusted upward or downward, however, if the court finds such adjustment necessary to provide for the needs of the children or to do justice between the parties under the special circumstances of the case." Iowa Ct. R. 9.4.

The district court's ruling provides: "Austin is not currently employed. The evidence does not establish that he is voluntarily unemployed or under-employed. He is not currently able to pay significant child support. His current child support will [be] established consistent with these findings." The court ordered his child support obligation to be set at $50 per month for two children.

The court's ruling does not specifically determine Austin's income but infers it is nonexistent. We are not convinced the inference is warranted. In answering the court's questions, Austin stated he was unemployed and was not receiving unemployment. On cross-examination, Austin testified he left work at Bankers Trust to work for Casey's, where he was employed from November 25, 2015, to May 20, 2016. He was unemployed until November 2016, and then went to work for Wells Fargo. His employment there was terminated in March 2017 for absenteeism. Austin worked at a restaurant for about two months beginning in June 2017 and supplemented his income driving for Lyft. In January 2018, Austin obtained employment with Principal where he was earning an hourly wage "but it worked out to $47,500 per year." He testified he was fired for tardiness on August 21. Yet, in completing his October 10, 2018 guidelines worksheet, Austin's calculations would call for his child support obligation to be set at $739.79 per month. The record also includes Austin's application materials to Principal in which Austin asserted he provided independent consultation to businesses.

Cassie contends the court's child support order is inequitable. She asserts the court failed to consider Austin's earning capacity in setting his child support obligation. Cassie argues, "Austin is capable of earning a decent living when he

is in control of his mental health issues."[5]  For child support purposes, however, the court is not to use earning capacity rather than actual earnings "unless a written determination is made that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the children or to do justice between the parties."  Iowa Ct. R. 9.11(4).

Here, the district made no finding as to Austin's gross monthly income, which is the "reasonably expected income from all sources."  We remand for the district court to make the findings necessary to determine the parties' child support obligations under the guidelines considering actual earnings, or earning capacity if appropriate.

*D. Appellate attorney fees.*  We decline Cassie's request to award her appellate attorney fees.  *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (noting appellate attorney fees are discretionary).

**AFFIRMED IN PART, MODIFIED IN PART, AND REMANDED.**

---

[5] Austin does not challenge Cassie's statement as to his earning capacity.

Austin has two bachelor of science degrees in mathematics and statistics and has worked for several years in the financial industry.  He appears capable of earning income.  And a condition of the modified decree includes that Austin "continue to exert reasonable efforts to obtain employment."  Nonetheless, Cassie's argument as to the graduated visitation appears to be based on her acknowledgement that Austin is not currently "in control of his mental health issues."  These issues are best determined by the district court.