**IN THE COURT OF APPEALS OF IOWA**

No. 19-0827
Filed June 3, 2020

**SAMANTHA JO FINK,**
    Plaintiff-Appellee,

**vs.**

**KEVIN WILLIAM BRADY,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.

The father appeals the terms of a modification decree that failed to reduce his child support obligation by an extraordinary visitation credit. **AFFIRMED AS MODIFIED**.

Jaclyn M. Zimmerman of Miller Zimmerman & Evans P.L.C., Des Moines, for appellant.

Samantha Jo Fink, Adel, self-represented appellee.

Considered by Vaitheswaran, P.J., Ahlers, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**AHLERS, Judge.**

Kevin Brady appeals the district court's decision not to grant an extraordinary visitation credit when it modified the parties' custody and support decree. Finding Kevin was entitled to an extraordinary visitation credit, we modify the district court's modification order to include such credit and otherwise affirm.

Kevin Brady and Samantha Fink were never married but have one child together. Via an order entered in 2015, Kevin and Samantha were awarded joint custody and shared physical care of the child.[1] In 2018, Samantha filed a petition seeking modification of the custody order to grant her physical care of the child and require Kevin to pay child support. Following a trial, the district court modified the custody order. The modification order left joint legal custody intact, but it modified the physical care provisions to award Samantha physical care of the child. Kevin was given visitation every other weekend from Friday afternoon to Monday morning, overnight every Wednesday, alternating weeks during summer break from school, and alternating holidays. Kevin was also ordered to pay child support pursuant to the child support guidelines. He was not granted extraordinary visitation credit against his child support obligation.

Kevin filed a posttrial motion pursuant to Iowa Rule of Civil Procedure 1.904(2) asking the district court to reconsider its ruling to reinstate the "week on/week off" schedule the parties had been following previously. Kevin's motion also requested the district court to grant appropriate extraordinary visitation credits regardless of whether the district court granted Kevin's request regarding

---

[1] The order was a bridge order entered pursuant to Iowa Code section 232.103A (2015) resolving a juvenile proceeding involving the parties.

additional parenting time. Samantha filed a resistance to Kevin's motion asking the district court to deny Kevin's request to reconsider the terms of physical care or visitation. However, Samantha's resistance conceded that Kevin was entitled to an extraordinary visitation credit.[2] In spite of Samantha's concession that Kevin was entitled to an extraordinary visitation credit, the district court denied Kevin's motion in its entirety. The order denying Kevin's motion did not elaborate on the reasons for the denial other than to state the modification order was "based on the record made and should not be disturbed." Kevin appeals. The only issue Kevin raises on appeal is the failure to grant him an extraordinary visitation credit. Consequently, we address only that issue.[3]

Child support modification actions are reviewed de novo. *In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006). Although we give weight to the findings of fact made by the district court, we are not bound by them. *Id.*

Kevin is entitled to credit against his child support obligation if he has court-ordered overnight visitation on 128 or more days per year. *See* Iowa Ct. R. 9.9 (stating "the noncustodial parent shall receive a credit" when overnight visits in excess of 127 days per year are ordered); Iowa Ct. R. 9.11 ("The court shall not vary from the amount of child support that would result from application of the guidelines without a written finding that the guidelines would be unjust or

---

[2] Kevin's motion requested a twenty percent credit, claiming the number of overnight visits was in the range of 148 to 166 days annually. *See* Iowa Ct. R. 9.9. Samantha's resistance conceded a fifteen percent credit, claiming the number of overnight visits was in the range of 128 to 147 days annually. *See id.*

[3] Although Samantha conceded Kevin was entitled to extraordinary visitation credit in her resistance to Kevin's motion to reconsider before the district court, Samantha has not filed a brief on appeal.

inappropriate . . . ."). There is no question Kevin was awarded at least 128 days[4] of overnight visitation per year. Even if we disregarded the visitation awarded to Kevin for holidays and extended time in the summer and considered only Kevin's weekend and Wednesday night visitation, Kevin still received 130 days of overnight visitation per year.[5] The only remaining issue is whether the credit should be fifteen percent or twenty percent.

Kevin asserts he is entitled to twenty percent credit because he received more than 147 days of overnight visitation. To reach this conclusion, Kevin makes two assumptions: (1) the holiday visitation will result in at least six additional overnights in addition to his weekly and weekend visitation; and (2) the summer break from school is twelve weeks. Both of these assumptions require additional record to support them. We have considered a remand to address these issues. However, in order to bring finality to these proceedings and avoid unnecessarily burdening the district court with proceedings on remand, we believe we can resolve these two assumptions on the record we have.

As for the holiday visitation, given the extensive weeknight and weekend visitation Kevin will receive throughout the year, we conclude any extra time Kevin will receive for holiday visitation will, on average, be offset by the extra time Samantha will receive for holidays. For example, if July 4 falls on a Wednesday in

---

[4] We recognize it may be confusing to reference "days" of "overnight" visitation. We reference it in this manner because rule 9.9 states that, for purposes of calculating the extraordinary visitation credit, "'days' means overnights spent caring for the" child.

[5] This figure is calculated by including every Wednesday night (52 nights) plus three nights of overnight visitation every other weekend (3 x 26 = 78 nights) for a total of 130 days.

an odd-numbered year, based on the visitation schedule in the modification order, Samantha would have the child overnight on July 4, even though Kevin would have otherwise been entitled to the child for his regular Wednesday night visitation. Likewise, holidays that fall on a weekend may change Kevin's weekend visitation schedule—sometimes to his benefit and sometimes to his detriment. While the practical effect of this holiday visitation schedule may result in additional visitation days to one party in a specific year, the record does not include a calculation of visitation days in any specific year to support this possibility. Furthermore, even if Kevin were to receive additional visitation days due to holidays in a specific year, we find it would be inappropriate to consider these quirks in the calendar for purposes of the extraordinary visitation credit in light of Kevin's significantly higher income.[6] *See* Iowa Ct. R. 9.11. Therefore, we find it reasonable to assume the alternating holiday time awarded to the parties will sufficiently balance out over time such that it is not necessary to consider holiday time in calculating the number of overnights for purposes of calculating the extraordinary visitation credit under rule 9.9.

As for Kevin's assumption that summer break is twelve weeks, we have no record of how long the summer break is for this child's school, not to mention summer break is frequently subject to change due to snow days, etc. *See* Iowa Code § 279.10(1). However, we do not believe a remand is necessary to address this issue, because we think it is safe to assume and take judicial notice of the fact

---

[6] The district court determined Kevin's gross annual taxable income is $34,320.00 and Samantha's gross annual taxable income is $8040.00.

that any summer break would be no greater than sixteen weeks in a typical year.[7] Even with a sixteen-week summer break, Kevin would still only have 146 days[8] of overnight visitation and would not reach the 148 to 166-day range necessary to qualify for a twenty percent credit under rule 9.9.

As analyzed above, the record supports a finding that Kevin has been awarded 130 to 146 days of overnight visitation per year. Therefore, he is entitled to a fifteen percent extraordinary visitation credit. Since there is no dispute that Kevin's child support obligation is $543.00 per month without the credit, we will use that figure as our starting point. Applying the fifteen percent credit, Kevin's child support should be $462.00 per month ($543.00 x .85 = $461.55). The district court's order is modified to set Kevin's child support obligation at $462.00 per month retroactive to April 1, 2019, which is the date of the district court's modification order. All other terms of the district court's order are affirmed. Costs are assessed to Samantha.

**AFFIRMED AS MODIFIED**.

---

[7] Iowa generally requires schools to provide at least 180 days of instruction each year. *See* Iowa Code § 279.10(1). Assuming a school is in session for five days every week without breaking for holidays, vacations, or inclement weather, school would be in session for thirty-six consecutive weeks ($180 \div 5 = 36$), leaving at most sixteen weeks for summer vacation ($52 - 36 = 16$).

[8] This figure is calculated by assuming fifty-two weeks in the year, with thirty-six weeks during the school year and sixteen weeks of summer break. This results in thirty-six Wednesday nights, plus fifty-four nights of overnight visitation every other weekend during the school year ($18 \times 3 = 54$ nights), plus fifty-six nights in the summer (all seven days of the week for Kevin's half of the summer break), for a total of 146 days. If we accept Kevin's assertion that summer break is only twelve weeks, his total days per year falls to 142 (40 Wednesdays plus 60 weekend days (3 days x 20 weeks) during the school year, plus 42 days (7 days x 6 weeks) during summer break).