# IN THE COURT OF APPEALS OF IOWA

No. 23-1699
Filed March 19, 2025

IN RE THE MARRIAGE OF JENNIFER JOETTE DUGGAN
AND ROBERT STEVEN DUGGAN

Upon the Petition of
JENNIFER JOETTE DUGGAN,
     Petitioner-Appellant,

And Concerning
ROBERT STEVEN DUGGAN,
     Respondent-Appellee.

_____

     Appeal from the Iowa District Court for Muscatine County, Tamra Roberts, Judge.

     A former spouse appeals from a dissolution decree, challenging its economic provisions. **AFFIRMED.**

     Cynthia D. Hucks of Box and Box Attorneys at Law, Ottumwa, for appellant.

     Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee.

     Considered by Schumacher, P.J., and Buller and  Langholz, JJ.

**BULLER, Judge.**

Jennifer Duggan appeals from the economic provisions of a decree dissolving her marriage to Robert "Bob" Duggan. After acknowledging serious deficiencies in Jennifer's appellate papers, we consider the merits of her claims as we understand them. We affirm, finding no failure to do equity.

## I.    Background Facts and Proceedings

Jennifer and Robert divorced after nineteen years of marriage. The dissolution trial addressed custody of two children (not the subject of this appeal) and numerous issues related to distribution of real and personal property (which Jennifer continues to contest).

Jennifer worked part-time as a real estate agent, but her real-estate work had "fizzled out because of COVID" in the year leading up to trial as the housing market slowed. She also received more than $39,000 in unemployment benefits between 2020 and 2021. From 2007 to 2016, Jennifer worked as a medical laboratory technician, making as much as $53,000 per year plus benefits (including retirement and stock options) during those years. Before the marriage, in 2001, Jennifer enlisted in the National Guard and received a "sign-on bonus." She served one tour in Iraq and was honorably discharged a few years into the marriage in 2007. Recent to trial, Jennifer had started working hourly for a hospital-group laboratory on an as-needed basis, making $30.50 per hour. The district court used $53,000 as Jennifer's income for child-support purposes.

Robert worked as a supervisor at a factory, salaried at just over $76,000 per year, plus annual profit-sharing payments ($7300 in 2022). The district court used $80,000 as Robert's income for child-support calculations.

During the marriage, Jennifer and Robert started a family business "flipping" houses. Both parents and their two children worked on the endeavor, which involved buying one or two houses per year and using the proceeds of the post-"flip" sale to pay the children and reduce marital debt. This side-hustle business brought in significant cash but, as the district court put it, once "the marriage started breaking down, the business relationship did too." As of trial, the business was essentially defunct, save for tools and supplies. In testimony, Jennifer maintained that the tools and supplies were worth $20,000 and that she would accept that valuation even if the tools and supplies were awarded to her. She later volunteered she did "not necessarily" want the tools but did not change her view on valuation. Robert accepted Jennifer's $20,000 valuation and testified she could have everything associated with the business for that amount.

The parties contested the value of the family home—a ranch with outbuildings on a few acres of land "just outside" Muscatine proper. Jennifer valued the home at $340,000 and testified that she believed that figure was more accurate than Robert's appraisal of $370,000 or the county's assessment of $370,450. Both parties requested they receive the home in the divorce. Jennifer testified that she wanted the home and did not want to pay an equalization payment to Robert, reasoning she had contributed more to the property. But she admitted on cross-examination that, as a real-estate agent, she understood the seller of a home would want to take a higher offer. Robert offered a pre-approval letter demonstrating he qualified to refinance the mortgage and pay out Jennifer's half of the home's value, even using his higher appraisal figure.

The district court's decree ultimately granted Robert the home and ordered him to pay Jennifer an equalization payment in the amount of $133,271.13 following post-ruling litigation over a few figures.[1]  Jennifer was granted physical care of the children and child support, but the court denied her request for rehabilitative spousal support.  She appeals the financial provisions and requests appellate attorney fees.

## II.    Discussion

As an overall observation, Jennifer's appellate briefing is unusual and a bit hard for us to decipher.  The rules of appellate procedure require that "[e]ach issue must be numbered and stated separately in the same order as presented in the argument," with each argument "in a separately numbered division" containing required subparts.  *See* Iowa R. App. P. 6.903(2)(a)(3), (8).  Jennifer's opening brief has a single argument, six bolded all-capital-letter headings with a single numbered list of cases under it, followed by about a dozen paragraphs of text that relate to some combination of the bolded issues (without differentiating among them).  Her reply brief has similar problems, with the added complications that we cannot tell what portions of the appellee's brief she is actually replying to and the majority of the reply brief is copy-paste identical to the opening brief.  To put it mildly, Jennifer's briefs do not comply with our rules.  And these deficiencies are particularly concerning given that Jennifer, through counsel, had three prior

---

[1] Lest we give the impression the stray figures were by fault of the district court, we note that court's frustration that the parties did not timely file statements of assets and liabilities before trial, leading that court to observe it "tried to sift through" the parties' statements and exhibits mid-trial rather than force a continuance.

attempts at an appellant's brief struck sua sponte by supreme court orders for other violations.

"Rule infractions are not a trivial matter." *State v. Lange*, 831 N.W.2d 844, 847 (Iowa Ct. App. 2013). And "[a] party's disregard of the rules may lead to summary disposition of the appeal or waiver of an issue." *Id.* We raise this concern not out of pettiness, but because "this court's principal role is to dispose justly of a high volume of cases" and "[a] party's noncompliance with the rules of procedure hinders our effort to meet this mandate." *Id.* (citing what is now Iowa Ct. R. 21.11). Jennifer's failure to comply with the rules has required additional expenditure of judicial resources, which is unfair to litigants who brief cases in compliance with the rules and adds to delays in the appellate process. That said, we exercise our discretion and decline to summarily affirm or dismiss Jennifer's appeal. We instead review the issues presented as we understand them, while restraining ourselves from undertaking the role of an advocate and developing arguments for her. *See Ronnfeldt v. Shelby Cnty. Chris A. Myrtue Mem'l Hosp.*, 984 N.W.2d 418, 421 (Iowa 2023).

All of the discernible claims in Jennifer's brief pertain to the economic provisions of the divorce decree. Those claims sound in equity, and our review is de novo. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). "We give weight to the factual determinations made by the district court; however, their findings are not binding upon us." *Id.* "We will disturb the trial court's order only when there has been a failure to do equity." *Id.* (cleaned up).

Particular to the division of assets, our review is guided by the factors outlined in Iowa Code section 598.21 (2021). *In re Marriage of Hansen*, 733

N.W.2d 683, 702 (Iowa 2007). "An equitable division is not necessarily an equal division," and what qualifies as an equitable distribution depends on the circumstances of each case. *Id.* Marital property's value is generally determined as of the trial date. *In re Marriage of Driscoll*, 563 N.W.2d 640, 642 (Iowa Ct. App. 1997). And in reviewing the trial court's determination, we will not disturb the valuation of an asset if "it is within the range of permissible evidence." *In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013).

### A. The Military Sign-On Bonus

Jennifer first appears to assert she should have received a line-item set-off for an $8000 military sign-on bonus because she earned part of it before marriage. In its order on Jennifer's post-ruling motion, the district court acknowledged that it mistakenly attributed military service to both her and Robert. But the court declined to credit Jennifer's $8000 sign-on bonus as a set-off to her, reasoning it "still reache[d] the same conclusion" about overall equitable division. Although the district court's factual error was unfortunate, we affirm its ultimate conclusion.

Jennifer's sign-on bonus was paid in two installments: $4000 when she completed training in 2002 and $4000 when she was honorably discharged several years later. Although the first payment predates the marriage, the record does not contain a date certain for the second (though it appears to have been very early in the marriage's duration). Given the nearly-two-decade time horizon and the relatively small amount of money at issue given the overall distribution, we do not discern any failure to do equity, and we decline to tinker with the division of assets.

**B. Other Premarital Assets and/or Inheritances**

It is not entirely clear to us whether some references in Jennifer's appellate brief were intended to challenge the division of certain assets she argued were premarital or inheritances. We decline to repeat at length the specifics litigated below, given the vague nature of Jennifer's briefing. But we have reviewed the overall distribution in light of Jennifer's complaints as we understand them, and we discern no failure to do equity in how the allegedly premarital assets or inheritances were handled. The court appropriately evaluated her inheritances, exempting her separate unused inheritance from the division, while considering the inheritance commingled with family assets in the marital assets. *Compare* Iowa Code § 598.21(5) (excepting inherited property from the division), *with In re Marriage of Fluent*, No. 16-1321, 2017 WL 2461601, at *2–3 (Iowa Ct. App. June 7, 2017) (collecting cases on equity of exempting from division inherited funds commingled with marital funds and used to support the family). As to her other exemption claims, the law is clear she is not "automatically" entitled to a set-off or division for premarital cash or other assets. *See In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006) ("[T]he property included in the divisible estate includes not only property acquired during the marriage by one or both of the parties, but property owned prior to the marriage by a party." (citation omitted)).

There is also reference in Jennifer's brief to a "typo" in the district court's settlement order that may or may not relate to this claim. But we—like Robert—understand the district court to have addressed this typographical error in the post-ruling order, we discern no actionable error on appeal, and we do not address this "typo" further.

### C. The Family Home

Deciding who would get the family home is perhaps the closest issue in this appeal. As the district court put it: "Both parties want the family home; however, Robert is willing to pay more for it." In awarding the home to Robert, one of the district court's rationales was that this would "allow the children to have a bedroom when they visit," as "[c]urrently Robert lives with his parents." Another was that, with Robert's higher income, he is more capable of refinancing the mortgage to pay out Jennifer's equity. Underlying this financial rationale was the court's concern that, to otherwise equitably divide the assets, the court may have required the parties to sell the home and divide the proceeds. The court also noted Jennifer's experience in purchasing property as a realtor and that both children could visit the marital home because they were of driving age and would spend time there during visitation.

We are not particularly persuaded by the district court's first rationale—that Robert chose to live with his parents while the divorce proceedings played out is not a great reason for awarding him the marital home. But the district court's financial reasoning makes sense. Jennifer testified at trial that she did not wish to sell the home because she wanted the children to use it for their remaining teenage years. And we are not inclined to second-guess the district court's assessment that it may have required the parties to sell the home and divide the proceeds to otherwise achieve equity given the division of assets, the parties' earning capacities, and Robert's somewhat greater ability to refinance the mortgage to pay out Jennifer. This conclusion is consistent with the theme, if not the outcome, of the supreme court's observation that, "[i]n decrees awarding a family home to the

custodial parent, an offsetting cash award to the noncustodial parent is quite common." *Hunt v. Kinney*, 478 N.W.2d 624, 625 (Iowa 1991). Here, awarding the home to Robert allowed the children to spend time in the home in the future, while the alternative of requiring sale and division of proceeds would not.

We recognize it is a bit unusual for a divorcing parent to receive physical care but not the marital home. But this is not unheard of. *See, e.g.*, *In re Marriage of Faber*, No. 12-0791, 2012 WL 6194356, at *1 (Iowa Ct. App. Dec 12, 2012); *In re Marriage of Lingle*, No. 10-0247, 2010 WL 3894493, at *3 (Iowa Ct. App. Oct. 6, 2010).[2] The statutory consideration of "[t]he desirability of awarding the family home . . . to the party having physical care of the children" is one of thirteen non-exclusive statutory factors and not dispositive. Iowa Code § 598.21(5)(g). Because the court considered the statutory factors, and we do not see a failure to do equity, we decline to modify the award of the family home.

### D. Personal/Business Property

At trial, Jennifer testified that the tools and other personal property associated with the family business were valued at $20,000 and requested that she receive this property—until she changed her tune in a post-ruling motion and asked for equal division, auction, or an increase in her equalization payment. On appeal, Jennifer repeats her post-trial request. But we share the district court's view that Jennifer's post-trial switcheroo "undermine[d] her credibility," and

---

[2] In his brief, Robert claims that we affirmed "awarding the marital home to the non-physical care parent because of the physical care parent's financial condition" in *In re Marriage of Siglin*, 555 N.W.2d 846, 849–50 (Iowa Ct. App. 1996). But that is not true. In that case, the parties' "two children were adults" and custody was not at issue. *Id.* at 847. We do not rely on *Siglin* in this opinion.

Jennifer offers us no cogent reason to believe the court failed to do equity by giving her what she wanted. The court's valuation was within the permissible range of evidence, as it was the valuation offered by Jennifer. *See McDermott*, 827 N.W.2d at 679. She is owed no relief.

Jennifer also mentions "[t]he court was in error with respect to [her] Labcorp stock" in the headings of her opening and reply briefs. But she doesn't put any meat on this skeletal argument. And it appears the district court amended its decree as she requested in her post-ruling motion. To the extent the issue is before us, we discern no actionable error with regard to the Labcorp stock.

### E. Spousal Support

An award of spousal support is not an absolute right, and any award instead depends on the circumstances of a case and the factors listed in Iowa Code section 598.21A. *See In re Marriage of Olson*, 705 N.W.2d 312, 315–16 (Iowa 2005). Our courts also balance the ability of a spouse to pay support against the needs of the requesting spouse, while considering the standard of living the parties enjoyed during the marriage. *In re Marriage of Stark*, 542 N.W.2d 260, 262 (Iowa Ct. App. 1995). As with other dissolution issues, we will not disturb a spousal-support award unless the district court failed to do equity. *In re Marriage of Pazhoor*, 971 N.W.2d 530, 541 (Iowa 2022).

On appeal, Jennifer complains that the district court did not consider "other forms of spousal support" beyond rehabilitative alimony. But we find the district court correctly considered only the relief requested, and Jennifer only requested rehabilitative alimony at trial. We similarly limit our review to the relief Jennifer

timely sought, finding her post-ruling motion seeking other forms of spousal support came too late.

The main thrust of why the district court declined to order rehabilitative alimony was that "Jennifer has not proposed any additional training, schooling, or certifications" or how the requested spousal support was necessary to maintain her current licensures or certificates. This rationale is supported by controlling case law. "Without a showing that the recipient spouse seeks reeducation, retraining, or some discrete period of time to increase earning capacity to become self-supporting, rehabilitative spousal support is inappropriate." *See In re Marriage of Sokol*, 985 N.W.2d 177, 186 (Iowa 2023). Jennifer did not make this showing below, and she was not entitled to rehabilitative alimony.

If anything, in our de novo review we tend to share the district court's observation that Jennifer's post-ruling request for transitional support was really to help "build up her business" after the economic downturn, not "transition from married to single life." When asked point-blank why she thought "alimony is appropriate in this case," Jennifer said: "Because my real estate [business] hasn't gone back up yet. There's a low supply of houses and everything." And she made similar statements on cross-examination. Jennifer has not cited to us, and we are not independently aware of, any case law holding that temporary local economic conditions support granting rehabilitative alimony.

Last on this issue, we—like the district court—observe that, even if we were inclined to consider other types of alimony despite Jennifer's narrow request at trial, we would find equity did not require it: Jennifer is gainfully employed whether she sticks with realty or the laboratory work, her long-term earnings prospects are

good, the gap between the parties' wages is not massive or insurmountable if she works full-time, and Jennifer received a large amount of liquid cash in the decree. We discern no failure to do equity in the denial of spousal support on this record.

### F. Child Support

In determining child support, the court found Jennifer was "significantly underemployed" and extrapolated her earning capacity for child-support purposes based on her past annualized income compared to her current part-time (and partially hourly) income. This was proper under court rules and the case law. Iowa Ct. R. 9.4; *see, e.g.*, *In re Marriage of McKenzie*, 709 N.W.2d 528, 533 (Iowa 2006) (discussing use of earning capacity instead of actual earnings). To the extent we can discern a legal argument challenging the child-support calculation from the body of Jennifer's appellate brief, we reject it and affirm the district court.

### G. Appellate Attorney Fees

Jennifer also requests appellate attorney fees. Our considerations for discretionary appellate attorney fees include the requester's need, the other party's financial ability, and the merits of the appeal. *See Sullins*, 715 N.W.2d at 255. But Jennifer did not prevail on any of her assignments of error, and she has the ability to pay her own attorney fees. Even if she had prevailed on the merits, we would not be inclined to award appellate attorney fees in light of her material and substantial violations of the rules of appellate procedure. We deny her request.

### III.     Disposition

Having identified no reversible error, we affirm the dissolution decree in its entirety and deny Jennifer's request for appellate attorney fees.

**AFFIRMED.**